In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00089-CV


______________________________




BILLY WAYNE HORTON, Appellant



V.



DEBRA FROELICH, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 02-C-0575-202




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Billy Wayne Horton, an inmate, appeals the dismissal of his lawsuit. The district
court found the alleged matters to be frivolous and dismissed the suit pursuant to Chapter
14 of the Texas Civil Practice and Remedies Code. The standard of review for dismissal
of this type of suit is whether the trial court abused its discretion. Hickson v. Moya, 926
S.W.2d 397, 398 (Tex. App.-Waco 1996, no writ).

 If a court finds a claim brought by an inmate to be frivolous or malicious, Section
14.003 allows a court to dismiss the claim, either before or after service of process. Tex.
Civ. Prac. & Rem. Code Ann. § 14.003(a)(2) (Vernon Supp. 2002). In determining whether
a claim is frivolous or malicious, the court may consider whether (1) the claim's realistic
chance of ultimate success is slight, (2) the claim has no arguable basis in law or in fact,
(3) it is clear the party cannot prove facts in support of the claim, or (4) the claim is
substantially similar to a previous claim filed by the inmate because the claim arises from
the same operative facts. Tex. Civ. Prac. & Rem. Code Ann. § 14.003(b) (Vernon Supp.
2002). However, the Texas Supreme Court has discouraged reliance on whether the
claim's realistic chance of ultimate success is slight or whether it is clear the party cannot
prove facts in support of the claim as a basis for the claim's dismissal. Johnson v.
Lynaugh, 796 S.W.2d 705, 706 (Tex. 1990). 

 Because the trial court held no hearing on the motion to dismiss, it may not dismiss
on the ground there was no arguable basis in fact. Lentworth v. Trahan, 981 S.W.2d 720,
722 (Tex. App.-Houston [1st Dist.] 1998, no pet.). Therefore, the issue on appeal is
whether the claim had no arguable basis in law. Sawyer v. Tex. Dep't of Criminal Justice,
983 S.W.2d 310, 311 (Tex. App.-Houston [1st Dist.] 1998, pet. denied). To determine
whether the trial court properly decided there was no arguable basis in law for Horton's
suit, we examine the types of relief and causes of action Horton pled in his petition to
determine whether, as a matter of law, the petition stated a cause of action that would
authorize relief. See Lentworth, 981 S.W.2d at 722. 

 Along with his original petition, Horton filed an affidavit of previous filings, an affidavit
related to his exhaustion of administrative remedies, and a motion to waive the filing fee. 
In his original petition, Horton sued for negligence and gross negligence. He alleged that,
while he was at the craft shop, Debra Froelich, a prison guard, had another inmate steal
certain items of personal property from his cell. Horton said Froelich was talking to this
inmate when she opened the door of his (Horton's) cell to let him go to the craft shop. 
Horton alleged Froelich was motivated to have the other inmate steal his property and
threaten him in order to intimidate him so that he would not tell about his suspicion that
Froelich and the other inmates were involved in illegal behavior. Horton contended
Froelich "at all times was either aware of the actions that her friend [the other inmate] and
his gang members were taking, or she personally ordered this action [the theft and the
threat] to be taken knowing the Plaintiff would be injured."

 A plaintiff seeking to recover in negligence must prove that the defendant's breach
of a legal duty proximately caused his or her damages. Peeler v. Hughes & Luce, 909
S.W.2d 494, 498 (Tex. 1995). Here, Horton alleged Froelich either ordered his property
stolen and him to be threatened or was aware of the actions between the other inmates
and him. If Froelich actually ordered Horton's property taken or ordered the threats against
him, Horton may have had valid arguments for claims of conversion and assault, but not
negligence. Negligence is not an intentional tort. If, instead, it was determined Froelich
did not order these things but was aware of the other inmates' actions, Horton would still
not have a claim in negligence. Horton was not able to establish a duty Froelich owed to
him. 

 To recover under a theory of gross negligence, a plaintiff must prove two elements:
(1) viewed objectively from the actor's standpoint, the act or omission must involve an
extreme degree of risk, considering the probability and magnitude of the potential harm to
others; and (2) the actor must have actual, subjective awareness of the risk involved, but
nevertheless proceeds with conscious indifference to the rights, safety, or welfare of
others. Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998). Neither of the fact
patterns alleged by Horton constituted gross negligence. Again, if Froelich ordered the
actions, Horton may have had a claim for assault or conversion, but not gross negligence. 
And, if Froelich was merely aware of the actions between the inmates, there was certainly
no claim for gross negligence. Under either scenario alleged in Horton's petition, there was
no basis in law for his claims of negligence or gross negligence. Therefore, the trial court
did not abuse its discretion when it dismissed Horton's petition.

 We affirm the judgment.



 Donald R. Ross

 Justice


Date Submitted: August 26, 2002

Date Decided: August 27, 2002


Do Not Publish

 


Welborn
, 785 S.W.2d at 393 (citing Ex parte Duffy, 607 S.W.2d 507,
526 (Tex. Crim. App. 1980)). "Numerous choices affecting conduct of the trial, including the
objections to make, the witnesses to call, and the arguments to advance, depend not only upon what
is permissible under the rules of evidence and procedure but also upon tactical considerations of the
moment and the larger strategic plan for the trial." Gonzalez v. United States, 128 S.Ct. 1765 (2008).

 To succeed on appeal in raising a claim that one's trial counsel provided ineffective
assistance, a habeas applicant must demonstrate by a preponderance of the evidence (1) that counsel's
representation fell below an objective standard of reasonableness and (2) that this deficient
performance prejudiced appellant's defense. Strickland, 466 U.S. at 687; Andrews v. State, 159
S.W.3d 98, 100-01 (Tex. Crim. App. 2005); Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). Evidence under both Strickland prongs must be firmly rooted in the record. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). It is critical that the applicant "demonstrate the
record shows both the alleged deficiency(ies) and the alleged prejudice." Bessey v. State, 199
S.W.3d 546, 555 (Tex. App.--Texarkana 2006), aff'd, 239 S.W.3d 809 (Tex. Crim. App. 2007). 
Under Strickland, the habeas applicant has the burden to prove "counsel's representation so
undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result." Mosley v. State, 141 S.W.3d 816, 826 (Tex. App.--Texarkana 2004,
pet. ref'd). The applicant must meet the burden of proof under both prongs of the Strickland test;
should the proof fail as to either, the reviewing court will have no choice but to deny the applicant's
claim of ineffective assistance. Id. 

 Moreover, the reviewing court's assessment of trial counsel's performance (which was in
Simpson's case first done by the trial court) must be highly deferential; that court should indulge a
strong presumption that counsel's conduct fell within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). The
reviewing court must also be careful not to second guess through hindsight the strategy of counsel
at trial; the mere fact that another attorney (such as applicant's current counsel) might have pursued
a different course will not support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979); Harner v. State, 997 S.W.2d 695, 704 (Tex. App.--Texarkana 1999, no
pet.).

 In Simpson's case, under Strickland's first prong, if the trial court could have reasonably
envisioned a legitimate trial strategy to explain counsel's alleged ineffectiveness, and if the record
supports such a conclusion by the trial court, then on appellate review we are foreclosed from
sustaining Simpson's claim of reversible error. Cf. Goodspeed v. State, 187 S.W.3d 390, 392-93
(Tex. Crim. App. 2005). Under Strickland's second prong, if the trial court could have reasonably
concluded the alleged deficient performance resulted in no prejudice to Simpson's case, then we are
similarly foreclosed from sustaining Simpson's claim of harm. We need not, however, conduct
analysis under Strickland's second prong (concerning prejudice) unless we first conclude the record
shows an abuse of discretion with respect to the trial court's decision under Strickland's first prong
(concerning deficient performance). Mata v. State, 226 S.W.3d 425, 433 (Tex. Crim. App. 2007);
Labib v. State, 239 S.W.3d 322, 336 (Tex. App.--Houston [1st Dist.] 2007, no pet.).

III. The Trial Court's Habeas Corpus Record

 The record in this case involves twists and turns of varying procedural and jurisdictional
transfers--transfers that have a direct impact on Simpson's factually based claim of ineffective
assistance. A short timeline is, therefore, useful for understanding the context of Simpson's claim.

 On March 5, 2002, the State filed an original petition in the juvenile court of Fannin County,
Texas, charging Simpson with six crimes. Simpson lacked only one month of attaining his
eighteenth birthday when the State's petition was filed. The crimes alleged in the petition can be
summarized as follows: 

 (1) aggravated sexual assault, alleged to have occurred on December 30, 1999, by
sexually assaulting M.S., a child younger than fourteen and not the respondent's spouse, by using
Simpson's sexual organ to penetrate M.S.'s female sexual organ;

 

 (2) aggravated sexual assault, alleged to have occurred on December 30, 1999, by
sexually assaulting M.S., a child younger than fourteen and not the respondent's spouse, by using
Simpson's finger to penetrate M.S.'s sexual organ;

 

 (3) indecency with a child, alleged to have occurred on December 30, 1999, by (with
intent to gratify or arouse his sexual desire) intentionally or knowingly engaging in sexual contact
with M.S., a child younger than seventeen and not Simpson's spouse, by touching M.S.'s female
sexual organ;

 

 (4) indecency with a child, alleged to have occurred on December 30, 1999, by (with
intent to gratify or arouse his sexual desire) intentionally or knowing engaging in sexual contact with
M.S. by touching M.S.'s breasts;

 

 (5) aggravated sexual assault, alleged to have occurred on December 30, 1999, by
sexually assaulting J.B., a child younger than fourteen and not Simpson's spouse, by using Simpson's
finger to penetrate J.B.'s sexual organ; and

 

 (6) indecency with a child, alleged to have occurred on December 30, 1999, by (with
intent to gratify or arouse his sexual desire) intentionally or knowingly engaging in sexual contact
with J.B. by touching part of J.B.'s genitals.


See Tex. Penal Code Ann. § 21.11 (Vernon 2003), § 22.021 (Vernon Supp. 2007). (3) 

 At a hearing on September 17, 2002, the presiding juvenile court found Simpson was born
on April 19, 1983, and would have thus been sixteen years of age at the time of the alleged offenses. 
The juvenile court then found that the welfare of the community required the criminal proceedings
against Simpson be transferred to Fannin County's District Court, that the State had met its burden
of proof to support such a transfer, and that the juvenile court's waiver of its exclusive jurisdiction
in this case was proper. The juvenile court then certified (or transferred) Simpson's pending charges
to the 336th Judicial District Court of Fannin County. See Tex. Fam. Code Ann. § 54.02(a)
(Vernon 2002).

 The following week, after Simpson waived his right to indictment by a grand jury, (4) the State
filed an information and complaint, both dated September 26, 2002, in the 336th Judicial District
Court of Fannin County. That information and complaint alleged, in a single count, that Simpson
intentionally or knowingly sexually assaulted M.S., a child younger than fourteen and not Simpson's
spouse, by causing his sexual organ to penetrate M.S.'s sexual organ. Simpson pleaded guilty to this
singular charge on this same date. The trial court accepted Simpson's plea, and pursuant to a
negotiated plea agreement, deferred a finding of guilt and released Simpson to community
supervision for a period of ten years. Simpson additionally waived his right to file a motion for new
trial and appeal the trial court's judgment in connection with that guilty plea. 

 The following spring, on February 18, 2003, the State filed a motion to proceed with an
adjudication of guilt. In lieu of adjudication, Simpson's community supervision was modified on
March 28, 2003, to include a period of thirty days' confinement in jail (without work release). 

 On October 6 of the following year, the State filed another application to proceed to an
adjudication of guilt. Again, Simpson's community supervision was modified to include an
additional 200 hours of community service in lieu of proceeding to an adjudication of guilt; that
modification was approved by the trial court on November 17, 2004. 

 On August 8, 2007, Simpson filed an application for writ of habeas corpus. Simpson claimed
his original trial counsel provided ineffective assistance of counsel by convincing him to waive the
juvenile court's jurisdiction and proceed with the felony plea bargain agreement in adult court. The
trial court heard testimony from several witnesses at the November 28, 2007, hearing on Simpson's
writ application.

 Simpson testified that he was twenty-four years old at the time of the 2007 habeas corpus
hearing, but he had been only sixteen when the various crimes allegedly occurred. He also identified
John Skotnik as being the lawyer appointed for him in 2002. Simpson told the trial court that
Skotnik had persuaded him to accept the State's plea offer of ten years' deferred adjudication in one
case rather than risk imprisonment in several cases, even though Simpson believed he was not guilty
of some of those other original charges. Simpson also told the habeas court that he had resided in
the same Greenville location from the date listed in the indictment until shortly before his eighteenth
birthday. Simpson believed that if anyone had made an effort to locate him during 2001 or 2002,
he would have been easy to find. To Simpson's knowledge, neither Skotnik nor the local police had
ever had any difficulty in locating Simpson during this time period. 

 During cross-examination, Simpson admitted Skotnik had told the then-eighteen year old 
that if he successfully completed the deferred sentence, then he would not have a felony sex crime
conviction on his record. He also admitted that successfully completing the deferred sentence would
keep him from going to prison. And, finally, Simpson acknowledged that he had been advised by
Skotnik in 2002 that if he gambled on being acquitted by a jury, and if Simpson lost on that gamble,
and if the jury sentenced him to prison, then it was highly unlikely that he would have been able to
be free on bond during the pendency of his appeal (wherein Simpson might challenge the original
transfer of his charges from juvenile court to district court). Given those options, Simpson made the
decision to choose the option that (potentially) allowed him to avoid any kind of prison time. 

 Skotnik also testified before the 2007 habeas court. Skotnik testified he was appointed in
2001 to represent Simpson in two cases involving multiple charges of sexual assault of a child and
indecency. Skotnik filed motions to quash the original felony indictments because (a) the crimes
allegedly occurred when Simpson was younger than seventeen, (b) the indictments had not been
obtained until after Simpson had turned eighteen and the State had failed to provide the trial court
with any evidence justifying the delay in first filing a petition with the juvenile court. See Tex. Fam.
Code Ann. § 54.02(j)(4)(B) (requiring juvenile court to find, before transferring, that "after due
diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of
the person because: (i) the state did not have probable cause to proceed in juvenile court and new
evidence has been found since the 18th birthday of the person; [or] (ii) the person could not be
found . . . ."). Those motions to quash were ultimately successful. 

 Skotnik also affirmed Simpson's earlier testimony that the accused had always been easy to
locate for court hearings and meetings with a juvenile probation officer. But Skotnik provided
additional insight into the basis for Simpson's 2002 decision to agree to a waiver of the juvenile
court's jurisdiction and acceptance of the State's negotiated plea agreement: Skotnik feared that (1)
a contested transfer hearing before the nonlawyer juvenile (county court) judge would have resulted
in a transfer to "adult" court; (2) that although he believed such a transfer would have been improper,
Skotnik knew no appeal of that ruling could be taken until after a trial that resulted in Simpson's
conviction; (3) that if he had to wait until an appeal to obtain a reversal of the transfer hearing,
Simpson would likely have to spend eighteen months to two years in prison during the pendency of
that appeal; and (4) that Simpson was, physically speaking, "not a large statured man" and both
Skotnik and Simpson himself feared he would not do well in prison. According to Skotnik, the
ultimate decision of whether either to accept the State's plea bargain or to fight the charges (and
appeal, if he lost at trial) was made exclusively by Simpson. 

IV. Skotnik's Advice, and Simpson's Reliance on That Advice, Was Reasonable 

 Some might say Simpson faced a Hobson's Choice: (a) fight the charges, lose, and prevail
on appeal, but spend more than a year in prison subject to the commonly perceived physical abuses
to which persons of slight stature like Simpson are exposed; or (b) accept the State's plea bargain and
avoid prison altogether if he successfully avoided further troubles with the law. 

 Except this was not really a Hobson's Choice. In American English, a Hobson's Choice
describes a situation in which a person may only choose between two bad options. Garner's
Modern American Usage 409 (2003). But Simpson's second option was not, in reality, a bad
choice because it allowed him to avoid any criminal conviction, it allowed him to avoid convictions
for the other charges that the State abandoned, and (most importantly) it allowed him to avoid prison
during the pendency of a potential appeal. And it appears from the testimonial record in the habeas
court that Simpson most wanted to avoid being sent to prison.

 Skotnik was a lawyer with more than twenty years' experience, who was currently serving
a term as a Bonham city judge. Skotnik knew the presiding officers of both the juvenile and the
district courts, and Skotnik relied on his considerable experience in handling prior matters before
those judges in predicting that either might (erroneously) approve the State's motion to transfer
Simpson's charges from juvenile to adult court. Skotnik also advised Simpson about the
consequences of a jury trial, and that it was his reasoned opinion that the best option for Simpson
to keep from going to prison was to accept that negotiated plea agreement. 

 The trial court's written ruling did not explain its basis for denying Simpson's application for
writ of habeas corpus. While it is better practice for a trial court to explain its habeas rulings, the
record before us suggests the trial court concluded Skotnik's recommendation to Simpson to accept
the State's plea offer was the product of a reasonable trial strategy. And from the record before us,
we cannot say the trial court abused its discretion in reaching such a conclusion. Therefore, because
the record does not demonstrate the trial court abused its discretion by holding Skotnik's performance
fell within the wide range of professional norms (thus Simpson cannot prevail under Strickland's first
prong), we must defer to that holding.

 For the reasons stated, we affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: July 1, 2008

Date Decided: July 2, 2008


Publish
1. See Tex. Code Crim. Proc. Ann. art. 11.08 (Vernon 2005) (pretrial application for writ of
habeas corpus).
2. Simpson's original application did not raise an additional, companion challenge to his
continued confinement under the Texas Constitution. Accordingly, we need not address whether
Simpson's continued confinement is illegal under the Texas Constitution. See generally Hernandez
v. State, 726 S.W.2d 53, 54-56 (Tex. Crim. App. 1986) (considering whether Article I, Section 10
of Texas Constitution provides greater protection for defendant beset by ineffective assistance than
protection provided under Strickland). See Strickland v. Washington, 466 U.S. 668 (1984).
3. Any statutory amendments to the applicable penal statutes are irrelevant to the issue raised
by Simpson on appeal. Our citation to the current statutory versions are provided merely as a
convenience to the reader.
4. See Tex. Const. art. I, § 10 (constitutional right to indictment by grand jury in felony cases);
Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon 2005) (statutory right to indictment by grand jury
in felony cases), art. 1.14(a) (Vernon 2005) (accused in noncapital case may waive any right
provided by law).