Carol C. PEELER, Petitioner,

v.

HUGHES & LUCE and Darrell C. Jordan, Respondents.

No. 94–0041.

Supreme Court of Texas.

Argued Dec. 14, 1994.

Decided Aug. 1, 1995.

Rehearing Overruled Oct. 27, 1995.

Arnold Anderson Vickery, Houston, Barry Allen Brown, Houston, Paul F. Waldner, Houston, for petitioner.

James E. Coleman, Dallas, Marvin S. Sloman, Dallas, Tim Gavin, Dallas, Barbara J. Elias–Perciful, Dallas, for respondents.

ENOCH, Justice, delivered the opinion of the Court, in which HECHT, CORNYN and OWEN, Justices, join.

Carol Peeler committed a federal crime. She now sues her attorney because she was indicted, convicted, and punished for that crime. We are asked to decide whether Texas law permits her to do so. The public policy of this State dictates that Peeler's own conduct is the sole cause of her indictment and conviction. Consequently, without first establishing that she has been exonerated by direct appeal, post-conviction relief, or otherwise, Peeler cannot sue her attorney. The trial court so held, the court of appeals so held, and we so hold. The judgment of the court of appeals is affirmed. 868 S.W.2d 823.

I

Carol Peeler was an officer of both Hillcrest Equities, Inc. and its wholly-owned subsidiary Hillcrest Securities Corp., Inc. (collectively, "Hillcrest"), a corporation trading in government securities. She and other indi-

viduals came under federal criminal investigation by the United States Internal Revenue Service because they were suspected of engineering illegal tax write-offs for wealthy investors. Peeler hired Darrell C. Jordan, a partner with Hughes & Luce, L.L.P., to represent her. She paid Hughes & Luce a $250,000 non-refundable retainer fee and further agreed to pay any hourly fees exceeding that amount.

After nearly four years of investigation and negotiation, a federal grand jury indicted Peeler on twenty-one counts. That grand jury also indicted her husband, and the other Hillcrest principals on various charges. A deal was struck between Peeler and the United States. Peeler signed a plea agreement admitting her guilt to count eighteen— "aiding and assisting the filing of a false and fraudulent U.S. Partnership Return of Income for Byrd Investments." *See* 26 U.S.C. § 7206(2). She also appeared before the federal judge, admitting her guilt and further testifying that her admission was freely and voluntarily given. In exchange for this, the United States dropped the balance of the charges against her, dismissed all charges against her husband, and recommended a relatively short prison sentence. She was sentenced to a $100,000 fine, $150,000 in restitution, and five years of probation in lieu of incarceration.

## II

■ This case comes to us in the posture of a summary judgment granted in favor of Jordan and Hughes & Luce. Many of the underlying facts in this case are not in dispute. Where they are, it is Peeler's summary judgment proof that we must accept as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Peeler complains that prior to the time she pled guilty, Jordan failed to tell her that the United States Attorney had offered her absolute transactional immunity.[1] In other words, the United States Attorney had offered to not prosecute Peeler for her crime, if she would become a witness and testify against her colleagues. Peeler learned about this offer from a journalist three days after pleading guilty. She sued Jordan and Hughes & Luce for violations of the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code §§ 17.41–17.63, and for legal malpractice, breach of contract, and breach of warranty.[2]

Jordan and Hughes & Luce moved for summary judgment on Peeler's claims. Among other grounds, Jordan and Hughes & Luce urged the trial court to grant their motion for summary judgment because Peeler's own conduct was the sole proximate or producing cause of her damages, and she did not seek to withdraw her plea or set aside her conviction. On these grounds, the trial court rendered summary judgment with respect to all of Peeler's causes of action. The court of appeals affirmed. 868 S.W.2d at 831. We agree.

## III

■ Generally, to recover on a claim of legal malpractice, a plaintiff must prove that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *See Cosgrove v. Grimes*, 774 S.W.2d 662, 665 (Tex. 1989). In the context of a criminal matter,

---

1. Peeler offered an affidavit from Assistant United States Attorney William Alexander stating that he had contacted Jordan in December 1985 to offer both Peeler and her husband transactional immunity in exchange for cooperation in the investigation. Of note are two other summary judgment proofs that Peeler offered. One was an excerpt from IRS agent Ernesto Hernandez's deposition where he stated that during plea bargain discussions, prosecutors told Jordan that the offer of immunity previously made was no longer available. The other was the affidavit of IRS agent Paul Smith in which he says the IRS suggested offering immunity to Peeler because she had not been "instrumental in setting up the tax shelter scheme because she was not even employed by ... [Hillcrest] at [the scheme's] ... inception," but rather she "had been used by the other principals to give the program more credibility."

2. After receiving Peeler's DTPA demand, Jordan and Hughes & Luce filed suit for $62,828.55 in unpaid legal fees. Peeler brought this action by way of counterclaim, and shortly thereafter, the trial court entered an agreed order realigning the parties. Jordan and Hughes & Luce ultimately abandoned their claim for attorney's fees.

we have not addressed whether the client's criminal conduct is, as a matter of law, the sole proximate or producing cause of the client's eventual conviction and damages, such that a legal malpractice claim may not be brought absent a showing that the plaintiff has been exonerated from the criminal conviction, either by direct appeal, post-conviction relief, or otherwise. We note that one Texas appellate court has held that the same elements apply to all legal malpractice cases, civil as well as criminal. *Tijerina v. Wennermark,* 700 S.W.2d 342, 344 (Tex. App.—San Antonio 1985, no writ). Another court required an appellant to show that the attorney's inaction was a proximate cause of some injury, but it did not confront the issue of whether a person who admits guilt would, as a matter of law, be able to prove such causation. *Wright v. Lewis,* 777 S.W.2d 520, 522 (Tex.App.—Corpus Christi 1989, writ denied). And in one case it was noted that the criminal defendant did not allege his innocence, but the court predicated its decision that the legal malpractice was not actionable upon the Texas Court of Criminal Appeals' holding that the defense lawyer had not rendered ineffective assistance. *Garcia v. Ray,* 556 S.W.2d 870, 872 (Tex.Civ.App.—Corpus Christi 1977, writ dism'd). None of these cases are helpful. Like the court of appeals below, however, nearly every court that has addressed the question of whether a convict may sue his or her attorney holds that, for reasons of public policy, the criminal conduct is the only cause of any injury suffered as a result of conviction. *See, e.g., Walker v. Kruse,* 484 F.2d 802, 804 (7th Cir.1973) (applying Illinois law); *Orr v. Black & Furci, P.A.,* 876 F.Supp. 1270, 1276 (M.D.Fla.1995) (applying Florida law); *Shaw v. Alaska,* 861 P.2d 566, 572 (Alaska 1993); *Weiner v. Mitchell, Silberberg & Knupp,* 114 Cal. App.3d 39, 170 Cal.Rptr. 533, 538 (1981); *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 788 (1991); *Morgano v. Smith,* 110 Nev. 1025, 879 P.2d 735, 737–38 (1994); *Carmel v. Lunney,* 70 N.Y.2d 169, 518 N.Y.S.2d 605, 607, 511 N.E.2d 1126, 1128 (1987); *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 114–15 (1993); *see also Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556, 566 (1993) (holding that a criminal defendant cannot satisfy the *dam-ages* element of a professional negligence claim against his former attorney unless he has been exonerated).

One court in particular has articulated the public policy considerations at stake:

> [P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime. As such, it is against public policy for the suit to continue in that it "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice."

*State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 504 (Mo.Ct.App.1985) (quoting *In re Estate of Laspy,* 409 S.W.2d 725 (Mo.Ct.App. 1966) (citations omitted)). *See generally* Sarno, Annotation, *Legal Malpractice in Defense of Criminal Prosecution,* 4 A.L.R.5th 273 (1992). As a result, only plaintiffs who have been exonerated are permitted to negate the sole proximate cause bar to their cause of action for professional negligence in these jurisdictions. *See, e.g., O'Blennis,* 691 S.W.2d at 503.

There are two states that have refused to impose an "innocence requirement" on convicts pursuing malpractice claims against their former attorneys. But they have done so without fully addressing the policy concerns of the jurisdictions that have adopted the innocence requirement. *See Krahn v. Kinney,* 43 Ohio St.3d 103, 105–06, 538 N.E.2d 1058, 1061 (1989); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900, 908 (1994). These courts entertain the possibility that a defense attorney's negligence may be the legal cause of a client's damages, treating legal malpractice suits against criminal and civil attorneys exactly alike. *See, e.g., Krahn,* 43 Ohio St.3d at 105–06, 538 N.E.2d at 1061.

IV

Because of public policy, we side with the majority of courts and hold that plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to

their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise. While we agree with the other state courts that public policy prohibits convicts from profiting from their illegal conduct, we also believe that allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict. This opportunity to shift much, if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys, drastically diminishes the consequences of the convicts' criminal conduct and seriously undermines our system of criminal justice. *See Shaw,* 861 P.2d at 571–72. We therefore hold that, as a matter of law, it is the illegal conduct rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned.

While urging us to apply the same standard for legal malpractice in the criminal law context as we do in civil contexts, Peeler implicitly differentiates her circumstances from the usual criminal prosecution in that had she received transactional immunity, she would have avoided criminal prosecution altogether, not to mention being indicted in the first place. This argument does not, however, address the public policy principle at issue that convicts may not shift the consequences of their crime to a third party.

Peeler makes much of the notably remarkable affidavit from the prosecuting attorney. He confirms that he had offered transactional immunity to Peeler through Jordan. Peeler also makes much of the personal emotional struggle she experienced over her concern for the care of her young children if both she and her husband were convicted on all counts of the indictment and consequently sentenced to lengthy prison terms. It was because of this admittedly grave and understandable concern that she accepted the deal with the prosecution. True, the constitutional protections conferred upon a citizen accused of a crime (including a right to counsel) emanate from this country's fundamental commitment to individual liberty. But, the purpose of such protections is to protect an innocent accused against an erroneous or overzealous prosecution. The lost opportunity of an admittedly guilty person to escape prosecution because of her lawyer's negligence does not override the public policy against shifting the consequences of a crime to a third party.

■ We emphasize that Peeler, at no time, even asserts that she did not commit the acts which formed the basis of the matters charged. To the contrary, she conceded in her deposition that she committed many of the acts for which she was indicted, but not prosecuted because of the deal she struck. Furthermore, care for her children ceased to be at risk, because the charges against her husband were dropped and her light prison sentence was probated. While arguably her plea is compelling, it cannot be gainsaid that to allow her suit against her attorneys merely permits cost-shifting of the consequences of her criminal conduct to her lawyer.

■ Accordingly, the trial court properly granted summary judgment for Jordan and Hughes & Luce. To recover either in negligence or under the DTPA, a plaintiff must prove causation. *See* TEX.BUS. & COM. CODE ANN. § 17.50(a) (establishing causation as an element of a DTPA claim); *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 774 (Tex.1995). A plaintiff seeking to recover in negligence must prove that the defendant's breach of a legal duty proximately caused his damages. A plaintiff suing under the DTPA must prove that the defendant's malfeasance was the producing cause of his damages. *See* TEX.BUS. & COM.CODE ANN. § 17.50. Common to both tests of causation is the element of cause in fact. Cause in fact means that the defendant's conduct was a substantial factor in bringing about the injury which would not otherwise have occurred. *Union Pump Co.* 898 S.W.2d at 775. Since Peeler has not been exonerated, her illegal acts remain the sole proximate and producing causes of her indictment and conviction as a matter of law.[3]

---

3. We note that whether the plaintiff has been exonerated is merely the threshold inquiry. Once the bar is removed, plaintiffs must still meet their burden of proving all elements of legal malpractice, including obtaining a fact finding

## V

At trial, Peeler also brought claims of breach of contract and breach of warranty, arguing that Jordan and Hughes & Luce's incompetence justifies recovery on those grounds. Since she did not raise any points of error in the court below regarding the trial court's summary judgment against her contract claims, those issues are not before this Court, and we express no opinion about them.

## VI

Before we may affirm the judgment of the court of appeals, we must consider Peeler's constitutional challenges to its holding that "any person who pleads guilty, remains convicted of an offense[,] and is unable to prove innocence must accept his criminal conduct as the sole proximate [or producing] cause of his indictment and conviction for that offense." 868 S.W.2d at 835. Peeler contends that the summary judgment against her violates the "open courts," "outlawry," and equal protection provisions of the Texas Constitution. TEX. CONST. art. I, §§ 3, 13, 20. Her constitutional claims have no merit.

▓▓ The "open courts" provision of our constitution provides: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. It applies only to statutory restrictions of a cognizable common law cause of action. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355–56 (Tex.1990). Since Peeler does not challenge a legislative act that infringes upon a common law cause of action, her "open courts" challenge is inapplicable here.

▓▓ Her equal protection claim is equally without merit. Peeler contends that the judgment against her abridges the equal protection clause of the Texas Constitution, which states: "All men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. I, § 3. She argues that the court

of appeals' ruling impermissibly distinguishes between legal malpractice plaintiffs who are convicted and other legal malpractice plaintiffs. Peeler does not suggest that the requirements we impose on convicts pursuing malpractice claims implicate her fundamental rights, and we note that criminal defendants are not members of a suspect class. *See McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059–60, 35 L.Ed.2d 282 (1973). Our holding, therefore, does not violate the Texas Constitution's equal protection provision as long as it is rationally related to a legitimate state interest. *See Spring Branch Ind. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 559 (Tex.1985). Barring convicts from suing their attorneys for malpractice related to their convictions is rationally related to the state's compelling interest of preventing criminals from profiting from their illegal acts or escaping their punishment by transferring all or a portion of it to another. *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 118–20, 112 S.Ct. 501, 510, 116 L.Ed.2d 476 (1991) (recognizing that states have an interest in preventing criminals from profiting from their crimes). The equal protection clause of the Texas Constitution has not been violated.

▓ Finally, the decision of the court of appeals does not infringe upon the Constitution's "outlawry" provision which provides that "no citizen shall be outlawed." TEX. CONST. art. I, § 20. Peeler argues that the court of appeals' holding brands her as an outlaw in violation of the Texas Constitution. The reasons given for including the "outlawry" provision in our Constitution suggest that it was intended to prohibit the state only from either denying a citizen *all* legal rights or transporting a citizen out of the state as punishment for an offense. TEX. CONST. art. I, § 20 interp. commentary (Vernon 1984). Because the requirement we impose upon Peeler neither banishes her from the state as a result of her criminal conviction, nor denies her all legal rights, the "outlawry" provision is irrelevant to Peeler's appeal. Accordingly, the "outlawry" provision of the Texas Constitution is not implicated.

that but for the legal negligence, plaintiffs would

not have been convicted.

\* \* \* \* \* \*

The record is silent as to whether Peeler filed a grievance against Jordan. Factual allegations of this nature generally merit review by the State Bar. Nothing in this opinion should be construed as relieving criminal defense attorneys of their responsibility to maintain the highest standards of ethical and professional conduct. Whether public policy prohibits Peeler's suit against her attorney is a question independent of whether her attorney committed acts proscribed by the State Bar's disciplinary code. *Cf. Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 171–172 (Tex.1993) (implying that attorney misconduct during trial, although not sanctionable under rule 215 of the Texas Rules of Civil Procedure, may be subject to disciplinary proceedings).

Striking what we believe is the proper balance between protecting the strong public policies of preventing convicts from escaping the consequences of, or benefiting financially from, their illegal acts and holding defense attorneys responsible for their professional negligence, we affirm the judgment of the court of appeals.

GONZALEZ, J., not participating.

HIGHTOWER, Justice, concurring.

I concur in the result. However, I write separately to comment on the alleged conduct of Hughes & Luce and Darrell Jordan. According to Peeler's pleadings and her summary judgment proof, Assistant United States Attorney William Alexander contacted Jordan in December 1985 to offer both Peeler and her husband transactional immunity from prosecution in exchange for her cooperation with the government's investigation.[1] IRS agent Ernesto Hernandez and others corroborated Alexander's testimony. According to Peeler, Jordan never communicat-

ed any such offer to her. Jordan denies that Alexander ever spoke to him concerning immunity for Peeler and her husband. Subsequently, transactional immunity from prosecution was offered to and accepted by another individual.[2] In January 1989, the government indicted Peeler, her husband and others on various charges. Based on the advice of Jordan and other lawyers, Peeler ultimately pled guilty to one count of the indictment in March 1989.

Even though the Court concludes that Peeler's own conduct is the sole proximate or producing cause of her indictment and conviction, the holding today should not be perceived as condoning the alleged conduct of Hughes & Luce and Jordan which, *if true,* is reprehensible and unconscionable.

PHILLIPS, Chief Justice, delivered a dissenting opinion, joined by GAMMAGE and SPECTOR, Justices.

The Court bases today's holding in large part on its belief that all criminal acts are so reprehensible that permitting someone convicted of a crime to recover against his or her former attorney for professional negligence "would shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *Supra* at 497. The public morality is thus protected at the expense of shielding all criminal defense attorney malpractice, no matter how egregious, from any redress in the civil justice system. While I agree with the Court's approach in those cases where there is some doubt about the effect of the alleged malpractice, I believe it proves too much in those unusual circumstances where the convicted defendant can offer particularly probative evidence that there would have been no conviction but for the attorney's malpractice. Because Peeler's summary judgment proof, if believed by the finder of fact, would meet this extraordinary

---

**1.** Alexander's sworn affidavit states:

On or about December 1–3, 1985, I made a definite, unambiguous offer of transactional immunity regarding all Hillcrest matters to Darrell Jordan, the attorney for Carol Peeler.... I advised Mr. Jordan that the government was willing to "forgive all of Ms. Peeler's sins regarding the Hillcrest matter from the beginning of the world until the end of time"

in exchange for her cooperation. The immunity offer extended to Ms. Peeler's husband as well, and would have prevented both of them from being indicted or prosecuted had Mr. Jordan communicated Ms. Peeler's acceptance of the offer to me.

**2.** In addition, at least one other defendant was represented by Hughes & Luce.

burden, I would reverse the judgment of the court of appeals and remand this cause to the trial court for further proceedings.

In most cases the law should not permit a person convicted of a crime to recover for legal malpractice. Allowing any disappointed convicted criminal to sue his or her former attorney would wreak havoc on the orderly administration of justice, impeding the delivery of legal representation guaranteed by the Sixth Amendment to anyone charged with an offense punishable by imprisonment. *See Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012–13, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963). If the law did not impose a substantial burden on convicted criminals seeking to sue their attorneys for professional negligence, most criminal convictions might simply be a prelude to a civil malpractice suit. Our civil justice system cannot and should not be available to hear such claims.

The Court's position, however, is that any person convicted of a crime must establish his or her innocence in order to maintain a civil malpractice suit. As the Court explains:

> Because of public policy, we … hold that plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise.

*Supra* at 497. To support this absolutist position, the Court relies on decisions from at least ten other states, which hold that a plaintiff's criminal conduct is solely responsible for the fine, prison sentence, or social stigma resulting from his or her conviction.

None of these cases, however, presents a situation analogous to Peeler's. In particular, in none of those cases would the allegations of malpractice, if true, conclusively have established that the former criminal defendant would have avoided conviction but for the attorney's malpractice. In *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783 (1991), for example, the plaintiff's criminal attorney failed to object to an erroneous jury instruc-

tion and the plaintiff was convicted. *Id.* 569 N.E.2d at 784. In the subsequent malpractice trial, the court held that the plaintiff was required to prove his innocence of the underlying criminal charge to establish causation since it was unclear whether the jury in his criminal trial, even if properly instructed, would have acquitted him. *Id.* 569 N.E.2d at 787. Likewise, in *Weiner v. Mitchell, Silberberg & Knupp,* 114 Cal.App.3d 39, 170 Cal. Rptr. 533 (1981), the plaintiff sued his former criminal attorneys for failing to apprise him of serious conflicts of interest. *Id.* 170 Cal. Rptr. at 534–36. Reviewing the trial court's dismissal of the plaintiff's suit, the court held that because the plaintiff could not assert his innocence, "all of the various causes of action alleged in tort against defendants … founder on the complete lack of proximate causation between the torts alleged … and the injuries plaintiff allegedly suffered…." *Id.* 170 Cal.Rptr. at 538.

Here, however, Peeler does not need to establish her innocence in order to prove with a high degree of certainty that her attorneys' conduct resulted in her indictment and conviction. If, as Peeler claims, the prosecutor made an offer of transactional immunity which Jordan failed to convey to her, that failure proximately caused her indictment and conviction. Whether Peeler actually committed the crimes with which she was charged is—under these circumstances—irrelevant. Under her version of the facts, she certainly would not have been either indicted or convicted had she known about and accepted the government's offer of transactional immunity. The affidavit offered as summary judgment proof from the prosecutor makes clear that the immunity he discussed with Jordan would have saved Peeler from prosecution for any acts arising out of the transactions under investigation. *Supra,* at 500 n. 1 (Hightower, J., concurring).

Thus, if a plaintiff introduces, as part of his or her case-in-chief, proof of an offer of immunity that is supported by evidence originating with the governmental entity that allegedly made that offer, and further proof both that the offer was not communicated to the defendant and that the defendant would

have accepted it, I would allow the plaintiff's action to proceed to the jury. This rule, unlike the Court's, would encourage attorneys to communicate such immunity offers in order to facilitate the conviction of those parties to a crime whom prosecutors believe are most culpable. Summary judgment still would be proper for a convicted criminal's former attorney, however, unless the plaintiff can provide testimony from a current or former prosecutor, an official government document, or some other evidence that meets this stringent burden, together with further proof that the offer would have made a difference but for the attorney's conduct.

Because Peeler's summary judgment proof meets this standard, I believe she should receive a trial on the merits. Accordingly, I respectfully dissent from the Court's judgment that she take nothing.[1]

---

1. Despite the Court's holding regarding Peeler's causes of action for negligence and violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code §§ 17.41–.63, she still might have had a remedy against Jordan and Hughes & Luce had she pursued on appeal her claims sounding in contract. Since causation is not an element of a contract or restitution claim, I would not construe anything in the Court's opinion to prevent a convicted former client from recovering against an attorney on those grounds. *See Bailey v.*

*Tucker,* 533 Pa. 237, 621 A.2d 108, 115 (1993). As the court of appeals noted, making post-conviction relief a prerequisite to recovery in negligence or under the DTPA does not preclude a convict from recovering against a former attorney for breach of contract or in restitution. 868 S.W.2d 823, 833. Indeed, the court in *Bailey* concluded that a suit sounding in contract rather than tort would both permit redress for the malfeasance of which Peeler accuses Jordan and Hughes & Luce and prevent criminals from profiting from their wrongdoing. 621 A.2d at 115.