

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00828-CV

Patricia **SKELTON**,
Appellant

v.

Guy James **GRAY**,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. 16416A
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:         Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Irene Rios, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Patricia Skelton sued her criminal defense attorney Guy James Gray for legal malpractice and breach of fiduciary duty. The trial court dismissed her claims pursuant to Rule 91a of the Texas Rules of Civil Procedure. We affirm the portion of the trial court's judgment dismissing Skelton's breach of fiduciary duty claim. We reverse the portion of the judgment dismissing Skelton's legal malpractice claim and remand the cause for further proceedings.

**BACKGROUND**

Skelton, an attorney, was charged with forging the will of her deceased client. The charge stemmed from a will she prepared for Ysidro Canales in May or June of 2002. Although the will was executed in Skelton's office, the original will remained in Canales's possession. When Canales died in May 2003, the original will could not be located. Skelton found a copy of the executed will in her office, but due to a flood, it was water-damaged. The will Skelton had prepared for Canales was still among the documents in her computer, so Skelton printed a clean copy. Because the newly printed copy of the will lacked signatures,[1] Skelton physically cut the signatures off the water-damaged copy of the will and pasted them onto the printed copy. Skelton made a copy of the newly created document and filed it as a copy of Canales's will in the probate court. In September 2003, Skelton's secretary contacted law enforcement and informed them that she suspected Skelton had created a false will for Canales. On November 15, 2004, Skelton was charged by indictment with forging Canales's will.

Gray represented Skelton in the December 2007 criminal trial. Skelton was ultimately convicted of forgery. The trial court sentenced her to a suspended one-year term of imprisonment and placed her on community supervision for two years. Thereafter, Gray's representation of Skelton ended, and she hired new counsel to represent her on direct appeal. On appeal, Skelton argued that the jury charge improperly allowed conviction for a theory not included in the indictment and that Gray rendered ineffective assistance. This court affirmed the trial court's judgment in an opinion dated June 9, 2010. *See Skelton v. Gray*, No. 04-08-00720-CR, 2010 WL 2298859 (Tex. App.—San Antonio June 9, 2010, pet. ref'd) (mem. op., not designated for publication).

---

[1] Skelton claimed she did not realize she could probate an unsigned will.

While her direct appeal was pending, a civil trial was held in the will contest between some of Canales's relatives. The jury found that (1) Canales executed a valid will; (2) Skelton did not act with the intent to defraud or harm another when she physically altered the will; and (3) the will submitted to probate was an accurate copy of Canales's will. Based on the jury's verdict, a judgment was rendered on March 17, 2009 ordering that the will contestants take nothing.

More than two years later, on September 26, 2011, Skelton filed an application for a writ of habeas corpus, "claiming that she is actually innocent, she was denied a fair trial due to prosecutorial misconduct, and she received ineffective assistance of counsel." *Ex parte Skelton*, 434 S.W.3d 709, 715 (Tex. App.—San Antonio 2014, pet. ref'd). Her actual innocence claim was based on the new evidence of the conflicting verdicts between the criminal and will contest trials. *Id*. at 733. This court rejected Skelton's prosecutorial misconduct and actual innocence claims, but granted habeas relief based on ineffective assistance of counsel. *Id*. at 733-34. Thus, this court vacated the judgment of the trial court in the criminal case and remanded the case for a new trial. *Id*. at 734. Instead of retrying Skelton on the forgery charge, the State dismissed the forgery charge on February 6, 2015.

On May 27, 2016, Skelton filed suit against Gray for legal malpractice and breach of fiduciary duty. In response, Gray filed a Rule 91a motion to dismiss, arguing 1) Skelton's legal malpractice claim was "barred by the *Peeler*[2] doctrine because she has not been exonerated from the underlying criminal conviction;" and 2) the statute of limitations barred her claims for both legal malpractice and breach of fiduciary duty.

---

[2] *Peeler v. Hughes & Luce,* 909 S.W.2d 494 (Tex. 1995).

The trial court granted the Rule 91a motion to dismiss in Gray's favor, finding the legal malpractice claim failed for lack of exoneration and the breach of fiduciary duty claim was barred by limitations. This appeal ensued.

On appeal, Skelton presents the following issues:

1. Can a person whose criminal proceedings are concluded by a court's ineffective assistance of counsel habeas determination followed by the State's dismissal of all charges sue the lawyer who gave ineffective assistance?

2. Does proper application of the *Hughes* tolling rule apply to permit a malpractice claimant to bring suit within two years of the "exoneration" event that allows her to bring suit?

3. Does proper application of the *Hughes* tolling rule apply to breach of fiduciary duty claims that are intertwined with the tolled malpractice claims?

## RULE 91A MOTION TO DISMISS

Rule 91a allows a party, with exceptions not applicable here, to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.*

We review the merits of a Rule 91a motion de novo, because the availability of a remedy under the facts alleged is a question of law. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724-25 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 75-76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). We apply the fair-notice pleading standard to determine whether the allegations of the petition are sufficient to allege a cause of action. *Wooley*, 447 S.W.3d at 76; *Yeske v. Piazza Del Arte, Inc.*, 513 S.W.3d 652, 661 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Except as required to determine an award of attorney's fees under Rule 91a.7, "the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX.

R. CIV. P. 91a.6; *Holland v. Davis*, No. 05-15-01173-CV, 2016 WL 3547982, at *1 (Tex. App.—Dallas June 28, 2016, pet. denied) (mem. op.).

***Skelton's Petition***

### a) *Legal Malpractice*

Skelton alleged that Gray breached his duty to her by: 1) failing to object when the State improperly tried her criminal case on a theory of forgery not alleged in the indictment; 2) failing to object when the prosecutor improperly made repeated references to her post-*Miranda* invocation of her Fifth Amendment right to silence and her Sixth Amendment right to counsel; 3) failing to object to the State's failure to designate Ranger Coy Smith as an expert and failing to object to Smith's "expert" opinion that she forged a document; 4) failing to object to the prosecutor's improper use of unproduced casino records as well as Irene Canales's testimony based on those records; and 5) failing to object to numerous improper jury arguments made by the State.

### b) *Breach of Fiduciary Duty*

Skelton alleged that Gray breached his fiduciary duty to her by requiring her to pay for office supplies and technology equipment that he acquired with her funds, but did not use for her benefit.

***Gray's Motion to Dismiss and the Trial Court's Ruling***

Gray moved to dismiss Skelton's malpractice claim under Rule 91a, arguing that because she had not been exonerated and had not fulfilled the innocence requirement of *Peeler*,[3] her malpractice claim had no basis in law. In addition, Gray argued that the statute of limitations barred Skelton's claims for both malpractice and breach of fiduciary duty. The trial court granted

---

[3] *Peeler v. Hughes & Luce,* 909 S.W.2d 494 (Tex. 1995).

the Rule 91a motion to dismiss in Gray's favor, finding the legal malpractice claim failed for lack of exoneration under *Peeler* and the breach of fiduciary duty claim was barred by limitations.

## LEGAL MALPRACTICE

To recover on a claim for legal malpractice, the plaintiff must establish: (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995). In *Peeler*, the Texas Supreme Court considered whether a convict can sue her criminal defense attorney for legal malpractice. A four-justice plurality concluded that under Texas public policy, a criminal defendant's own conduct is the sole cause of any damages flowing from her indictment and conviction, unless the conviction has been overturned. *Peeler*, 909 S.W.2d at 497-98. Thus, the court held that "plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id.*

In the matter before us, the trial court granted the Rule 91a motion pursuant to the *Peeler* doctrine, ruling that Skelton's malpractice claim was barred due to her "failure to show that she has been exonerated of the offense." Skelton argues that the trial court erred, as a threshold matter, by applying *Peeler*, which is distinguishable and inapplicable. She contends *Peeler* only applies to *convicted* criminals and that her conviction no longer stands. She alternatively argues that if a *Peeler* analysis is necessary, her claims were improperly barred because she has been "effectively exonerated" by way of the habeas proceeding and the State's dismissal, along with the jury's finding in the will contest that she did not act with the intent to defraud or harm another when she altered Canales's will.

We agree that the facts before us are distinguishable from the facts in *Peeler*. *Peeler* applies in cases where a malpractice plaintiff has been convicted of a crime. Ms. Peeler pleaded guilty to a federal crime and received a sentence pursuant to a plea agreement. *Id.* at 496. After she learned her trial attorney had failed to communicate to her an offer of absolute transactional immunity, she sued her attorney. *Id.* At the time Ms. Peeler sued her attorney, her conviction was still intact. In fact, Ms. Peeler admitted committing many of the acts for which she was indicted.[4] Skelton, in contrast, was not operating under a criminal conviction at the time she sued her attorney. Skelton sued Gray for legal malpractice *after* her conviction was vacated[5] by this court and the State elected to dismiss the charge against her. Thus, at the time she sued Gray, Skelton was not a "plaintiff[ ] who [had] been convicted of a criminal offense" for purposes of *Peeler*. *Id.* at 497-98. Keeping in mind, as we must, the posture of this case as a Rule 91a motion to dismiss, we conclude the trial court erred in applying the *Peeler* doctrine to the facts of this case and in dismissing Skelton's malpractice claim. Therefore, we sustain Skelton's first issue on appeal.

## STATUTE OF LIMITATIONS

Because of its ruling on the basis of *Peeler*, the trial court did not reach the question of whether the statute of limitations precluded Skelton's malpractice claim. Because the parties have fully briefed the limitations issue as to both claims, we will in the interest of judicial economy discuss limitations as to both the malpractice and breach of fiduciary duty claims. We first address the malpractice claim.

---

[4] *See id.* at 498 ("We emphasize that Peeler, at no time, even asserts that she did not commit the acts which formed the basis of the matters charged. To the contrary, she conceded in her deposition that she committed many of the acts for which she was indicted, but not prosecuted because of the deal she struck.").

[5] *See Lofton v. State*, 777 S.W.2d 96, 97 (Tex. Crim. App. 1989) (when the trial court sets aside the verdict and vacates its judgment, the case is restored "to its position before the former trial").

*Malpractice Claim*

A cause of action for legal malpractice is in the nature of a tort subject to the two-year limitations statute. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2017); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). A legal malpractice claim accrues when the client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers, or should have discovered through the exercise of reasonable care and diligence, the facts establishing the elements of the claim. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003; *see S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (legal injury rule); *Willis*, 760 S.W.2d at 646 (discovery rule). In *Hughes*, the Texas Supreme Court established a tolling rule for the statute of limitations in legal malpractice cases: "[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991). The *Hughes* rule applies even in cases in which the attorney's representation of the client terminates after the act of negligence, but before the conclusion of the litigation. *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 121 (Tex. 2001).

In the case before us, the applicable timeline of events is as follows:

- December 13, 2007: Jury verdict on fraud charge; Gray's representation concluded
- March 25, 2011: Court of Criminal Appeals issues mandate denying Skelton's petition for discretionary review
- September 26, 2011: Skelton files application for writ of habeas corpus
- November 6, 2014: Fourth Court of Appeals issues mandate in habeas proceeding
- February 6, 2015: forgery charge dismissed by State
- May 27, 2016: Skelton files suit against Gray

Gray argues limitations began to run on Skelton's malpractice claim on March 25, 2011 when the Court of Criminal Appeals issued its mandate denying Skelton's petition for

discretionary review. *See Hughes*, 821 S.W.2d 158 n.6 (holding the last action of right that the Hugheses could take and did take was when the Texas Supreme Court overruled their motion for rehearing); *see also Golden v. McNeal*, 78 S.W.3d 488, 494 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (noting that the last action of right that could have been taken in plaintiff's criminal prosecution was the petition for writ of certiorari filed with the United States Supreme Court). Gray contends that in a criminal case, the end of a direct appeal ends the tolling of the statute of limitations for malpractice claims related to the underlying representation.

Skelton claims the underlying litigation was not finally concluded and the malpractice claim did not accrue until this court issued its mandate in the habeas corpus proceeding on November 6, 2014, or, perhaps, until the State dismissed the charges against Skelton on February 6, 2015. Skelton filed suit against Gray within two years of either date. Skelton argues *Apex Towing* crafted an additional reference date—when litigation is "otherwise finally concluded"— which supports using the date of the mandate issuance in the habeas proceeding. *See Apex Towing Co.*, 41 S.W.3d at 119. She notes that a habeas corpus application "relates to and flows from the original conviction." *See Falby v. Percely*, No. 09-04-422 CV, 2005 WL 1038776, at *2 (Tex. App.—Beaumont May 5, 2005, no pet.) (mem. op.). As a result, only a final order in a habeas corpus proceeding marks the conclusion of the litigation from which it flows. Skelton also argues from a policy perspective that if we were to adopt Gray's rationale, a potential malpractice plaintiff would be barred by limitations before she ever has the opportunity to obtain exoneration. Thus, she contends limitations cannot accrue on a legal malpractice claim against a criminal defense attorney until after the attorney's former client has had a reasonable opportunity to seek habeas corpus relief to challenge the conviction.

We agree that Skelton's malpractice claim is not barred by limitations. To bring a cause of action for legal malpractice against a criminal defense attorney would require the plaintiff to

overcome the application of the *Peeler* doctrine by either the absence of a conviction or exoneration. In this case, Skelton could not have sued Gray for malpractice until her conviction had been vacated through the habeas corpus proceeding. Had she tried to sue him any sooner, her claim would have been barred by *Peeler.*

Other jurisdictions have held that limitations is tolled while a criminal defendant pursues post-conviction relief. *See, e.g., McKnight v. Office of Pub. Def.*, 197 N.J. 180, 182, 962 A.2d 482, 483 (2008) (per curiam) ("in a legal malpractice action brought by a defendant against the attorney who represented him in a criminal case, the statute of limitations does not begin to run until the defendant receives relief in the form of exoneration"); *Griffin v. Goldenhersh*, 752 N.E.2d 1232, 1240 (Ill. App. Ct. 2001) ("we hold that a legal malpractice cause of action does not accrue until the plaintiff's conviction is overturned"); *Steele v. Kehoe*, 747 So.2d 931, 933 (Fla. 1999) (holding statute of limitations on malpractice action does not commence until defendant has obtained final appellate or postconviction relief); *Shaw v. State Dept. of Admin., Pub. Def. Agency*, 816 P.2d 1358, 1360 (Alaska 1991) ("We hold that a convicted criminal defendant must obtain post-conviction relief before pursuing an action for legal malpractice against his or her attorney."). "Given that obtaining such relief will remain uncertain until actually granted, the statute of limitations for filing legal malpractice claims must be tolled until such relief is granted." *Shaw*, 816 P.2d at 1360; *see also Peeler*, 909 S.W.2d at 497-98 (allowing plaintiff who has been convicted of a criminal offense to sue for legal malpractice "in connection with that conviction only if they have been exonerated on direct appeal, **through post-conviction relief**, or otherwise"). There are sound public policy reasons for tolling the statute of limitations on legal malpractice actions until post-conviction relief has been obtained. Dispositive post-conviction relief is relevant to the issues of proximate causation and damages, and thus tolling promotes

judicial economy "because many issues litigated in the quest for post-conviction relief will be duplicated later in the legal malpractice action." *Shaw*, 816 P.2d at 1361.

Gray argues that limitations cannot be tolled until the end of the habeas proceeding because Texas has no deadline for filing post-conviction relief following a criminal conviction, and thus there is no time limit on a criminal defendant's ability to sue her defense attorney for malpractice arising out of the initial representation. We disagree that the possibility of indefinite tolling exists. First, a habeas application may be denied on the basis of laches. *See, e.g., Ex parte Perez*, 398 S.W.3d 206, 210 (Tex. Crim. App. 2013); *Ex parte Vasquez*, 499 S.W.3d 602, 612 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Second, convicted criminals have a vested interest in seeking post-conviction relief as quickly as possible. Many individuals seeking post-conviction relief are incarcerated, or, like Skelton, seeking to recover a professional license vital to their livelihood. Thus, Gray's concerns related to a never-ending tolling period are unfounded.

Given the unique nature of the legal malpractice claim arising out of criminal proceedings, limitations must run from the event that "exonerates" the former criminal defense client or otherwise vacates that client's conviction. We therefore conclude that the statute of limitations on Skelton's legal malpractice claim was tolled until the completion of the habeas corpus proceeding which served to overturn her conviction, i.e., on November 6, 2014. Because Skelton sued within two years of that date, her malpractice claim is timely.

### *Breach of Fiduciary Duty Claim*

Skelton also sued Gray for breach of fiduciary duty. In her petition, she alleged, "[d]uring the representation, Defendant charged Plaintiff in excess of $2,800 for office supplies and computer equipment that he falsely claimed was necessary to the representation but he actually did not utilize in his representation of Plaintiff." The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant

of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The limitations period for a breach of fiduciary duty claim is four years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (West 2002). "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Accident Ins. Co., v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.*

The trial court found that Skelton's cause of action for breach of fiduciary duty accrued in December 2007 when Gray's representation of Skelton ended and that Skelton did not plead "excusable delay in discovering" Gray's alleged misconduct. The trial court further found that, "if [Gray] failed to use the $2,800 payment for her benefit, [Skelton] would have been entitled to a refund of the payment by [Gray] at the conclusion of his employment, even if she had been found 'not guilty' in the trial court or her post-conviction writ application based on ineffective assistance had been denied." Thus, the trial court found that tolling did not apply to the breach of fiduciary duty claim and that limitations barred Skelton's claim for breach of fiduciary duty in December 2011.

Gray's representation ended in December 2007 at the conclusion of the criminal trial. Skelton did not plead the discovery rule or otherwise assert that she was not aware of the alleged breach until a later date. Thus, Skelton was required to bring her breach of fiduciary claim by the end of December 2011. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5). Because her breach of fiduciary claim is untimely, it has no basis in law. Accordingly, we hold the trial court did not err in dismissing Skelton's breach of fiduciary duty claim. *See* TEX. R. CIV. P. 91a.

- 12 -

## CONCLUSION

We reverse the trial court's dismissal of Skelton's legal malpractice claim and remand the cause to the trial court for further proceedings in relation to that claim.  In all other respects, the judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice