# IN THE SUPREME COURT OF TEXAS

════════════

No. 18-0386

════════════

GUY JAMES GRAY, PETITIONER,

v.

PATRICIA SKELTON, RESPONDENT

════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

════════════════════════════════════════════

**Argued September 26, 2019**

JUSTICE DEVINE delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE BUSBY joined.

JUSTICE BLACKLOCK filed a dissenting opinion, in which JUSTICE GREEN and JUSTICE BLAND joined.

In *Peeler v. Hughes & Luce*, a plurality of this Court concluded that a client could not sue her criminal-defense attorney for malpractice so long as she stood convicted of the underlying crime. 909 S.W.2d 494, 497–98 (Tex. 1995). The plurality reasoned that, until the conviction is overturned, "it is the illegal conduct [of the convict,] rather than the negligence of a convict's counsel[,] that is the cause in fact of any injuries flowing from the conviction." *Id.* at 498. Accordingly, "plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been *exonerated* on direct appeal, through post-conviction relief, or otherwise." *Id.* at

497–98 (emphasis added). The primary dispute in this case is over *Peeler*'s exoneration requirement.

The client here sued her criminal-defense attorney for malpractice after having her conviction vacated on the basis of ineffective assistance of counsel. The trial court dismissed the client's legal-malpractice claim as baseless under *Peeler*. But the court of appeals reversed and remanded, concluding that *Peeler* did not bar the client's claim. 547 S.W.3d 272 (Tex. App.—San Antonio 2018). We agree that *Peeler* does not bar the client's malpractice claim and accordingly affirm the court of appeals' judgment.

**I**

Attorney Patricia Skelton was charged with forging a deceased client's will. *See* TEX. PEN. CODE § 32.21(b). The charges related to a will Skelton drafted for Ysidro Canales, who died about a year after the will's execution. Although Canales retained the signed original, his family could not find his will after his death. Skelton, however, had a copy in her files. Unfortunately, her copy of Canales's will was water-damaged from a rainstorm that partially flooded her law office.

Skelton still had an electronic copy of Canales's will on her computer's hard drive, however, from which she printed a clean copy. The print out, of course, did not contain the signatures of Canales or his witnesses. Believing that she could not probate the will without the signatures, Skelton cut the signatures off the water-damaged copy of the will and pasted them onto the new print out. Skelton then filed this cut-and-paste version of Canales's will with the probate court, not disclosing to the court what she had done. Soon thereafter, Skelton's administrative assistant

informed law enforcement that she suspected Skelton of creating a false will, and after further investigation, Skelton was indicted for forging Canales's will.

Skelton pleaded not guilty to the charge and hired Guy Gray, a criminal-defense attorney. After she was convicted of forgery in December 2007, Skelton replaced Gray with new counsel for the appeal. The new attorneys argued, among other things, that Gray rendered ineffective assistance of counsel. The court of appeals affirmed her conviction, finding the record insufficient to hold Gray's counsel ineffective under the Sixth Amendment. *Skelton v. State*, No. 04-08-00720-CR, 2010 WL 2298859 (Tex. App.—San Antonio June 9, 2010, pet. ref'd) (mem. op.). The Court of Criminal Appeals subsequently refused Skelton's petition for review.

Meanwhile, some of Canales's relatives filed a will contest in the probate court. There, the jury found that (1) Canales executed a valid will; (2) Skelton did not act with the intent to defraud or harm another when she physically altered the will; and (3) the will submitted to probate was an accurate copy of Canales's will. After these findings in the will contest, Skelton filed an application for a writ of habeas corpus in the district court. In her habeas application, Skelton renewed her ineffective-assistance argument and also claimed she was actually innocent based on the jury findings in the will contest. The district court denied the writ. The court of appeals, however, reversed the district court's denial and granted Skelton habeas relief. Although the court of appeals did not consider whether Skelton was actually innocent of forgery, it agreed with Skelton that, under the Sixth Amendment's standard for deficient legal representation set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), Gray's counsel constituted ineffective assistance. *Ex parte Skelton*, 434 S.W.3d 709, 730–33 (Tex. App.—San Antonio 2014, pet. ref'd). On this ground, the

3

court of appeals vacated Skelton's conviction. *Id.* at 734. The State subsequently elected to dismiss Skelton's criminal charges.

About a year later, Skelton sued Gray for malpractice. Gray moved to dismiss her claim under Texas Rule of Civil Procedure 91a, arguing that Skelton was not "exonerated" under the *Peeler* doctrine and further that the two-year statute of limitations barred her claim. The trial court granted Gray's motion, concluding that the *Peeler* doctrine barred Skelton's malpractice claim because she had failed to prove her exoneration. The court of appeals reversed, holding that because Skelton's conviction had been vacated, the *Peeler* doctrine did not apply. 547 S.W.3d at 277. The appellate court also considered a statute-of-limitations issue the trial court did not reach because of its application of *Peeler*. As to that issue, the court of appeals concluded that Skelton's malpractice suit was timely filed because the limitations period was tolled until Skelton obtained habeas relief. *Id.* at 278–79.

We granted Gray's petition for review to consider the meaning of "exonerated" under *Peeler* and *Peeler*'s interaction with equitable-tolling principles under *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991).

## II

Gray argues that *Peeler* bars a convicted criminal defendant from bringing a legal-malpractice claim against her former defense counsel unless and until she is exonerated. He submits further that "exoneration" under *Peeler* requires not only the vacatur of the underlying criminal conviction but also a determination of the formerly convicted person's actual innocence. Gray then

4

concludes that because the habeas proceeding here did not also determine Skelton's innocence, Skelton cannot sue him for his alleged malpractice.

Skelton responds that *Peeler* does not bar her malpractice claim because she is no longer a convicted criminal. Alternatively, if *Peeler* does apply, Skelton maintains that she has nevertheless been exonerated by the appellate court's decision to vacate her conviction, the State's decision to dismiss all charges, and the jury's determination in the will contest case that she did not commit fraud. In fact, Skelton submits she must be presumed innocent now that an appellate court has vacated her previous conviction.

In *Peeler*, Carol Peeler was indicted by a federal grand jury on twenty-one counts after being suspected of engineering illegal tax write-offs. 909 S.W.2d at 495–96. Peeler hired Darrell Jordan, a partner with Hughes & Luce, LLP, to represent her. *Id.* at 496. While under Jordan's advisement, Peeler signed a plea agreement admitting guilt to one count of aiding and assisting the filing of a false and fraudulent tax return. *Id.* In exchange, the government dropped the balance of the charges against her, recommending a relatively short prison sentence. *Id.* Peeler was eventually ordered to serve five years of probation, with a fine of $100,000 and $150,000 in restitution. *Id.*

Peeler later sued Jordan, alleging that before she pleaded guilty, Jordan knew but failed to tell her that the government had offered her absolute transactional immunity if she testified against her colleagues. *Id.* Peeler thus sued Jordan for legal malpractice. In the trial court, Jordan and his firm, Hughes & Luce, moved for summary judgment, arguing that Peeler's own conduct proximately caused her damages. *Id.* On this ground, the trial court granted summary judgment, and the court of appeals affirmed. *Id.* Thus, in *Peeler*, the question before this Court was whether a convicted

5

criminal could sue her criminal-defense attorney for malpractice. A plurality held that, with one important qualification, a convict could not.

Under the now so-called *Peeler* doctrine, convicts may not sue their criminal-defense attorneys for malpractice unless "they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id.* at 498. This is so, the *Peeler* plurality explained, because "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict." *Id.* Without this rule, malpractice claims brought by convicted criminals would "drastically diminish[] the consequences of the convicts' criminal conduct and seriously undermine[] our system of criminal justice." *Id.* And as the plurality also noted, permitting a convicted criminal to recover damages through a legal-malpractice claim would allow that criminal "to profit by his own fraud, or to take advantage of his own wrong, or to found a claim upon his iniquity, or to acquire property by his own crime." *Id.* at 497 (quoting *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504 (Mo. Ct. App. 1985)).

While the *Peeler* plurality predicated its holding on public-policy considerations, policy was not the only driving force behind its reasoning. At its core, the *Peeler* doctrine rests on the notion of proximate cause. It is the convicted criminal's illegal conduct, not the attorney's negligence, that proximately causes the conviction. *See id.* at 497–98. That is, even if the defense attorney had not been negligent, the conviction would still follow based on the evidence of the underlying crime. So if convicted criminals want to sue their defense attorneys, they must first remove the proximate-cause bar. They can do so, the plurality said, by being "exonerated." *Id.* at 498.

6

Yet the *Peeler* plurality did not precisely define the term "exonerated" because the disposition of that case did not so require. In this case, however, we must. The question here is whether Skelton has been "exonerated" by having her conviction set aside for ineffective assistance of counsel.

Skelton equates "exoneration" with the act of vacating a conviction, particularly when those grounds do not relate to innocence, such as ineffective assistance of counsel. But such equation is inconsistent with both the plurality's and dissent's repeated use of the word "innocence" in *Peeler* itself. *Id.* at 497 (using and quoting the word "innocence" at least four times); *see also id.* at 501 (Phillips, C.J., dissenting) (using the word "innocence" to describe the plurality's holding at least three times). Indeed, the plurality explicated the underlying policy justifications with "proof of innocence" and an "innocence requirement" in mind. *Id.* at 497. Having counsel that falls below minimum Sixth Amendment standards, as Skelton did here, suggests nothing about the criminal defendant's innocence of the underlying crime. It merely says that a conviction cannot stand in the face of a constitutionally deficient trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 379–80 (1986) (noting that, although criminal-procedure rights in the Constitution "promote the ultimate objective that the guilty be convicted and the innocent go free," they are "granted to the innocent and the guilty alike") (quoting *Evitts v. Lucey*, 469 U.S. 387, 394 (1985)).

Skelton's view also does not comport with the definition of exoneration: "The clearing of someone's name after that person has been accused of blameworthy conduct or wrongdoing." *Exoneration*, BLACK'S LAW DICTIONARY 721 (11th ed. 2019). Exoneration's definition contemplates an affirmative act—that is, "the clearing of." Skelton therefore does not stand

7

"exonerated" by the mere fact that the State has decided to not bring criminal charges against her a second time. Inaction is not affirmative.

Nor do we find persuasive Skelton's related argument—that she is exonerated because now, without a conviction, she is presumed innocent until proven guilty. The presumption of innocence is a fundamental principle in our criminal-justice system. But the presumption of innocence at trial that the State must overcome is just that: a presumption at trial that the State must overcome. It relates to burdens of proof, not affirmative acts of exoneration. That the State failed to prove a defendant committed a criminal act beyond a reasonable doubt does not mean the defendant did not in fact commit the crime. It merely means the State failed to meet its evidentiary burden. *See Ex parte Elizondo*, 947 S.W.2d 202, 207 (Tex. Crim. App. 1996) ("The actual-innocence inquiry is therefore distinguishable from review for sufficiency of the evidence, where the question is not whether the defendant is innocent but whether the government has met its constitutional burden of proving the defendant's guilt beyond a reasonable doubt.") (quoting *Herrera v. Collins*, 506 U.S. 390, 443 (1993) (Blackmun, J., dissenting)).

All this is not to say that having a conviction vacated is unnecessary to remove the proximate-cause bar. Quite the opposite. The *Peeler* plurality declared that, as a convicted criminal, Peeler could not maintain a malpractice suit against her defense attorney "unless the conviction has been overturned." *Id.* at 498. And shortly preceding that statement, the plurality suggested that a convicted criminal's "direct appeal" or "post-conviction relief" would be requisite components of the exoneration process. *See id.* So while having a conviction vacated is not alone sufficient to remove the proximate-cause bar, it is the necessary predicate for a malpractice suit.

Gray, in contrast, argues we should look no further than the basis of Skelton's post-conviction relief—that is, ineffective assistance of counsel. Because Skelton was not found actually innocent of criminal forgery in her habeas proceeding, Gray contends, *Peeler* precludes Skelton from pursuing her malpractice claim. Gray would thus expand *Peeler*'s reach exponentially, having it categorically bar all claims made by formerly convicted individuals, excepting only those who have been declared "actually innocent" in their habeas proceeding. While we agree with Gray insofar as he argues that Skelton's conviction must be vacated, we disagree that Skelton must also be declared actually innocent before she may initiate her claim. To be sure, having a conviction vacated on an actual-innocence finding will remove *Peeler*'s proximate-cause bar. But an actual-innocence finding in a habeas proceeding is not the only means by which an individual can meet *Peeler*'s exoneration requirement.

Which brings us to the next question: What else must an individual, whose conviction has been vacated, affirmatively show to remove *Peeler*'s proximate-cause bar? For a traditional legal-malpractice claim, a client must establish that the lawyer owed the client a duty of care, the lawyer breached that duty, and the lawyer's breach proximately caused the client's damages. *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). But for those whose conviction has been vacated on grounds other than actual innocence, we add one more requirement: They must obtain a finding of their innocence as a predicate to the submission of their legal-malpractice claim. Submission of the traditional elements of legal malpractice to the factfinder should thus be conditioned on an affirmative finding that the malpractice plaintiffs are innocent of the crime of which they were formerly convicted. The burden of proof for this predicate finding is the same as in any civil

malpractice case: preponderance of the evidence. By requiring this proof, we do not deviate from *Peeler*'s proximate-cause rationale because a negative answer to the threshold question negates causation.

In sum, exoneration under *Peeler* requires not only that the underlying criminal conviction be vacated but also proof of innocence. Innocence, however, can be established in more than one way. It can be established in the underlying criminal proceeding when the conviction is vacated on an actual-innocence finding. *See In re Allen*, 366 S.W.3d 696, 700 (Tex. 2012). Or, if the conviction is vacated on other grounds, formerly convicted individuals may prove their innocence in their malpractice suit against their criminal-defense attorneys.

### III

The court of appeals also determined that Skelton's malpractice claim was not barred by the two-year statute of limitations. In doing so, it tolled the limitations period not only during Skelton's direct appeal but also until the time her conviction was vacated in her habeas proceeding. 547 S.W.3d 272, 278 (Tex. App.—San Antonio 2018). The court of appeals reasoned that, because Skelton could not have brought her claim for legal malpractice until she obtained post-conviction relief, the limitations period must begin running "from the event that 'exonerates' the former criminal defense client or otherwise vacates that client's conviction." *Id.* at 279. In so holding, the court of appeals essentially extended our decision in *Hughes v. Mahaney & Higgins*, which held that the limitations period for legal-malpractice claims would be tolled until "all appeals on the underlying claim are exhausted." 821 S.W.2d 154, 157 (Tex. 1991).

10

Gray takes issue with this extension of *Hughes*'s tolling principles. He complains that the extension here is unworkable because applications for post-conviction relief are not subject to specific deadlines and thus may be used to toll limitations indefinitely. Gray submits that *Hughes* tolling should not be extended beyond the direct appeals in the underlying criminal case.

While we share Gray's concern, we do not agree with his remedy. As this case demonstrates, a criminal conviction may be overturned in post-conviction proceedings collateral to the convicted individual's direct appeal. So for purposes of the *Peeler* doctrine, the limitations period should be tolled during both direct appeals and post-conviction proceedings; conversely, limitations should run during periods when neither a direct appeal nor a post-conviction proceeding is pending. While novel, this extension of tolling principles satisfies our preference for bright lines in the statute-of-limitations context, *see Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001), and cures the potential problem of malpractice claims being tolled until some indeterminate time in the future when the convicted criminal seeks post-conviction relief.

One reason for *Hughes* tolling, as we explained in *Apex Towing*, was that sometimes the viability of the malpractice action "depends on the outcome of the underlying litigation." *Id.* at 121. This viability rationale is apt here. For Skelton to bring her malpractice claim against Gray, she must have her conviction vacated. Skelton's malpractice claim thus depended on the outcome of her habeas litigation. *Cf. Hughes*, 821 S.W.2d at 157 ("Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first."). Because in many instances certain classes of claims may not arise until after the direct-appeal process (e.g., ineffective assistance of counsel, *Brady* violations, use of junk science), tolling during

11

post-convictions proceedings ensures the preservation of meritorious claims. While Skelton asserted an ineffective-assistance claim on direct appeal, claims on which post-conviction relief are predicated often emerge only after the appeals process solidifies the conviction.

To clarify, we consider the tolling period to include not only the habeas application process but also the period during which Skelton's case was pending for a new trial, awaiting the State's prosecution. We hold this view for two reasons. First, the habeas relief did not end the criminal case against Skelton. It merely vacated the original conviction. Charges still loomed, and Skelton's malpractice claim remained captive to the possibility of a second prosecution and conviction that might likewise bar her malpractice claim. *See Apex Towing Co.*, 41 S.W.3d at 119 ("[T]he statute of limitations on a malpractice claim against that attorney is tolled until . . . the litigation is otherwise finally concluded."). And second, the State controlled when and whether to dismiss the charges set out in the indictment, effectively putting Skelton's limitations period at the State's mercy. Because the viability of Skelton's malpractice claim was dependent on the dismissal of these charges or a subsequent acquittal, it would be unfair to run out limitations during any delay or indecision about further prosecution.

Under *Hughes* tolling, the limitations period on Skelton's malpractice claim was tolled up to March 25, 2011, the date the Court of Criminals Appeals issued its mandate denying Skelton's petition for discretionary review. Under our decision today, the limitations period on Skelton's claim was again tolled on September 26, 2011, when she filed her application for writ of habeas corpus. This second tolling period then ended on February 6, 2015, when the State dismissed Skelton's charges. Skelton subsequently filed her malpractice suit against Gray on May 27,

12

2016—collectively, less than the two-year statute-of-limitations period applicable to legal-malpractice suits. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Skelton's suit, based on our tolling of the limitations period, was thus timely.

* * * * *

We therefore conclude that the statute of limitations does not bar Skelton's malpractice claim against Gray. We conclude further that the *Peeler* doctrine does not bar Skelton's malpractice claim, and she must now obtain a finding of her innocence in the malpractice action to maintain that claim. We thus agree with the court of appeals' decision to remand this case for trial, and its judgment is accordingly affirmed.

_____
John P. Devine
Justice

**OPINION DELIVERED:** February 21, 2020

13