In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-19-00305-CV

**COLTON LESTER, Appellant**

**V.**

**CECIL E. BERG, SETH JOHNSON,
JOHNSON LAW OFFICE, PLLC, DUSTIN ANDREAS,
AND PHILLIPS AND ANDREAS, PLLC, Appellees**

**On Appeal from the 411th District Court
Polk County, Texas
Trial Cause No. CIV32046**

## MEMORANDUM OPINION

Appellant Colton Lester (Appellant or Plaintiff) sued his criminal defense attorneys, Appellee and Cross-Appellant Cecil Berg, Appellees Seth Johnson and Johnson Law Office, PLLC (the Johnson Defendants), and Appellees Dustin Andreas and Phillips and Andreas, PLLC (the Andreas Defendants) (collectively Defendants), for legal malpractice arising from Appellant's conviction for attempted online solicitation of a minor. The trial court granted Defendants' motions for

1

summary judgment in the legal malpractice claim and Lester filed this appeal with our Court. We affirm.

Background

In his criminal case, Lester entered a guilty plea, and he was placed on five years deferred adjudication. After his probation was revoked in 2016 for his failure to comply with several different terms of his deferred adjudication, he was found guilty and sentenced to three years in TDCJ. In 2018, Lester's criminal conviction was vacated by the Texas Court of Criminal Appeals through post-conviction relief. *See Ex parte Lester*, No. WR-88,227-01, 2018 Tex. Crim. App. Unpub. LEXIS 294 (Tex. Crim. App. Apr. 11, 2018).

After his criminal conviction was vacated, Lester filed a civil suit against the Defendants[1] alleging negligence and gross negligence with respect to their legal representation of Lester in his criminal case. According to Lester's malpractice petition, he was seventeen years old when he was charged by information in August of 2014 for the attempted solicitation of a minor that occurred on April 27, 2014.

The Defendants each filed a motion for summary judgment, arguing that Lester's legal malpractice claims should be dismissed. According to the exhibits filed with the Defendants' motions for summary judgment, the underlying criminal

---

[1] Berg and the Andreas Defendants were also designated by the Johnson Defendants as Responsible Third Parties.

2

complaint was made against Lester on April 27, 2014. An officer was then dispatched to investigate the complaint which involved an alleged sexual offense committed by Lester. A parent of one of the alleged victims wanted to file charges against Lester after Lester communicated with their twelve-year-old[2] daughter, Christy,[3] through Snapchat, in which Lester asked Christy for a picture of her breast, and Lester then promised Christy a nude picture of himself in return. During the investigation, the officer was provided the name of another child, Brandy, who was also twelve years old,[4] and the officer spoke with Brandy who confirmed that Lester had also communicated with her through Kik and Snapchat and that Lester also sent her a picture of his sexual organ. When the officer spoke to one of Brandy's parents, the officer learned that her parents also wanted to file charges. A few days later, fourteen-year-old Tiffany was interviewed and confirmed that Lester sent her twelve-year-old sister, Brandy, sexual communications through the sister's tablet device using Kik, an instant messaging application. The Polk County Sheriff's Department gained the consent of the parents to use one of the minor's devices to

---

[2] The record indicates in one document that the child was eleven years old and in another document that the child was twelve years old.

[3] We refer to the victims and their family members in the criminal matter using pseudonyms to protect their identities. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[4] The record indicates in one document that the child was twelve years old and in another document that the child was thirteen years old.

continue to communicate with Lester. Posing as one of the girls who was under fourteen years of age, a detective began communicating with Lester. The girl's communication advised Lester that she was under fourteen, but Lester still engaged in sexually explicit communications and propositioned her and asked her to meet him to have sex. Law enforcement traveled to the meeting location, and they found Lester, who initially gave a false name before truthfully identifying himself and Lester was arrested. Lester's phone was confiscated, and he was transferred to the Polk County Sheriff's Office where, after being given his *Miranda* warnings, he admitted to sending the messages to Christy and Brandy.

According to our appellate record, Lester was initially charged in criminal cause numbers 23,488 and 23,489, for alleged offenses against each victim. A typewritten Texas DPS computerized criminal history report that was attached as an exhibit in the motions for summary judgment indicates that Lester was charged in cause number 23,488, with a violation of 33.021(f), and charged in cause number 23,489 with a violation of 33.021(c).[5] Our record indicates Lester was charged in criminal cause number 23,488 with the second-degree felony of "online solicitation of a minor under 14" and charged in criminal cause number 23,489 with the second-degree felony of "online solicitat[ion] of a minor sexual conduct[.]" The documents

_____

[5] Johnson's affidavit indicates that in cause number 23,488, Lester was charged under section 33.021(c).

also included an officer's affidavit with respect to the offense against Christy wherein the affiant stated:

[] Affiant shall show that he is a duly sworn Peace Officer in and for the State of Texas, employed by the Polk County Sheriff[']s Office, serving in the capacity of Detective.

[] Affiant shall show that on April 27, 2014[,] the Polk County Sheriff's Office received two complaints in referenced to Online Solicitation of a Minor.

[] Affiant shall show that [Christy's father] reported that his 11 year old daughter had been receiving messages from a 17 year old by the name of Colton Lester.

[] Affiant shall show that Colton Lester had been messaging [Christy] and asking her to send him a photograph of her breast.

[] Affiant shall show that Colton Lester was also soliciting [Christy] to meet him in person.

[] Affiant shall show that Colton Lester met [Christy] through another 13 year old girl that he has also been sending sexual messages and photographs to.

[] Affiant shall show that on April 27, 2014[,] [Brandy's mother] reported that Colton Lester had been sending messages and photographs to her 13 year old daughter.

[] Affiant shall show that on April 28, 2014[,] with the parent's consent, we pretended to be [one of the girls that was under 14 years old] and started messaging Colton.

[] Affiant shall show that Colton Lester solicited her for sex knowing that she was 13 years old and asked to meet for sex.

[] Affiant shall show that we met with Colton off of Munson Road and arrested him for Online Solicitation.

5

> [] Affiant shall show that Colton was arrested and brought to the Sheriff's Office where he confessed to both under Miranda Warning.

According to Lester's malpractice petition, he retained the Johnson Defendants to defend him and represent him in the two cases, and the Johnson Defendants told Lester that he should make a plea bargain with the State.

The record indicates that the State and Lester entered into a plea agreement whereby cause numbers 23,488 and 23,489 were to be dismissed and replaced by an information in cause number 23,538, and Lester was to receive five years deferred adjudication, and he would not have to serve jail time or register as a sex offender. In cause number 23,538, the State then filed a superseding information charging Lester with attempted online solicitation of a minor under fourteen (as to only one of the victims). Lester alleged in his malpractice petition that he followed the recommendation of his attorney, Johnson, and he entered into a plea bargain agreement in which he pleaded guilty to the offense of attempted online solicitation of a minor, a third-degree felony.[6] According to the documents in our record, Lester signed a written plea acknowledging the following:

> I, Colton Alan Lester, the Defendant, in Polk County, Texas, on the 27th day of April, 2014, did then and there intentionally, with the

---

[6] A person commits an offense of criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. Tex. Penal Code Ann. § 15.01(a). An offense under section 15.01 is one category lower than the offense attempted, and if the offense is a state jail felony, the offense is a Class A misdemeanor. *Id.* § 15.01(d).

6

specific intent to commit the offense of Online Solicitation of a Minor, do an act, to-wit: composing a text message containing an explicit sexual proposition to [], a minor the Defendant believed to be 14 years of age or younger, which amounted to more than mere preparation that tended by [sic] failed to effect the commission of the offense intended.

The State dismissed the charges in cause numbers 23,488 and 23,489, and Lester received five years of deferred adjudication probation in cause number 23,538. As a result of the plea, Lester did not have to serve jail time or register as a sex offender. The Order of Deferred Adjudication in cause number 23,538 stated the statute of offense was Texas Penal Code section 33.021(f), which is a penalty provision for both section 33.021(b) and section 33.021(c).[7] *See* Tex. Penal Code Ann. § 33.021(f).

---

[7] The version of 33.021(b) and 33.021(c) at the time of Lester's offenses provided as follows:

(b) A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:
(1) communicates in a sexually explicit manner with a minor; or
(2) distributes sexually explicit material to a minor.

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, [if the person] knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

On August 18, 2015, the State filed a Motion to Adjudicate Guilt alleging Lester had violated the conditions of his deferred adjudication: by failing to pay his monthly supervision fees for January, May, and July of 2015; failing to pay assessed court costs, fine, and court-appointed attorney's fees for September of 2014, and February and July of 2015; failing to complete the court-ordered community service for at least eight hours per month for February through June of 2015; and failing to attend and successfully complete sex offender counseling. The Andreas Defendants were then appointed to represent Lester relating to the motion to revoke. According to Lester, the Andreas Defendants advised him to accept a modification that included, among other things, incarceration in a State of Texas Contracted Intermediate Sanction Facility for a period of not less than 45 days or more than 120

---

. . . .

(f) An offense under Subsection (b) is a felony of the third degree, except that the offense is a felony of the second degree if the minor is younger than 14 years of age or is an individual whom the actor believes to be younger than 14 years of age at the time of the commission of the offense. An offense under Subsection (c) is a felony of the second degree.

*See* Act of May 21, 2007, 80th Leg., R.S., ch. 610, § 2, 2007 Tex. Gen. Laws 1167, 1167-68 (amended by Act of May 27, 2007, 80th Leg., R.S., ch. 1291, § 7, 2007 Tex. Gen. Laws 4344, 4350; Act of May 11, 2015, 84th Leg., R.S., ch. 61, § 2, 2015 Tex. Gen. Laws 1036, 1036 (current version at Tex. Penal Code Ann. § 33.021(a), (c), (f))).

8

days and the continuation of his probation upon his release. On February 3, 2016, the trial court signed an Order on the Motion to Modify the Conditions of Probation.

On July 29, 2016, the State filed a Second Motion to Adjudicate Guilt, and then on August 2, 2016, the State filed a First Amended Second Motion to Adjudicate Guilt, and Berg was appointed to represent Lester at the second revocation hearing. The Second Motion to Adjudicate Guilty alleged that Lester violated the conditions of his supervision by failing to attend and successfully complete the Sex Offender Treatment Program; failing to pay monthly supervision fee for November and December of 2015, and January of 2016; failing to pay court costs, fine and court-appointed attorney's fees for June of 2015, August through December of 2015, and January, February, and June of 2016; failing to perform eight hours of community service a month for November and December of 2014, January through June of 2015, August through December of 2015, and January, February and June of 2016; failing to pay costs associated with urinalysis testing; and accessing an online environment that allows interactions with other users. Lester pleaded true to the alleged violations, and on September 14, 2016, Lester was sentenced to three years of confinement for the original charge of attempted online solicitation of a minor.

Lester's malpractice petition alleged that in October of 2017, while incarcerated, he "was contacted by the State Counsel for Offenders who informed

9

him for the first time that the statute under which he was convicted was void prior to the offense date" because on October 30, 2013, the Court of Criminal Appeals, in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), held that section 33.021(b) of the Texas Penal Code was unconstitutional. On application for a writ of habeas corpus, the Court of Criminal Appeals set aside his conviction and stated that "In *Ex parte Lo*, this Court declared the statute of conviction, § 33.021(b), unconstitutional" and concluded that Lester's "conviction is not valid in light of *Ex parte Lo*." *See Ex parte Lester*, 2018 Tex. Crim. App. Unpub. LEXIS 294, at *1. Accordingly, on April 11, 2018, the Court "set aside" Lester's sentence and remanded the case to the trial court to dismiss the indictment. *Id.*

According to his legal malpractice petition, Lester served approximately two years of prison time for allegedly committing a crime that "did not exist[,]" and Lester alleged that all Defendants failed to disclose to him that the statute under which he was charged was declared unconstitutional and void approximately eight months prior to when he engaged in the alleged attempted online solicitation of a minor. Lester alleged that the Johnson Defendants were negligent for negotiating and advising Lester to plead guilty to a statute that was declared void and that the Andreas Defendants and Berg were negligent for advising Lester to accept a modification of his probation rather than withdraw his guilty plea and seek dismissal of the charges because the statute of conviction was void.

10

After filing their answers to the legal malpractice petition, the Defendants each filed a traditional motion for summary judgment, arguing that the doctrine set forth in *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex. 1995), applied to negate proximate cause of Lester's legal malpractice claims. In each of the Defendants' summary judgment motions, the Defendants alleged they were not the proximate cause of any injury alleged by Lester. The Defendants alleged that the habeas Court did not find him innocent, he has not been exonerated, and he is not innocent. The Defendants argued that even though Lester's petition for habeas corpus was granted and his conviction set aside, Lester admitted to committing the acts of online solicitation of minors and pleaded guilty as charged, and that he was charged under Texas Penal Code sections 33.021(c) and 33.021(f), and not section 33.021(b). The Andreas Defendants also argued that as public defenders they are immune from legal malpractice liability arising from their appointments. The Johnson Defendants also argued that Lester's claims were barred by limitations.

One of the exhibits attached to each of the Defendants' motions for summary judgment is the reporter's record of Lester's plea hearing wherein he admitted his guilt to the Court, he testified no one was forcing him to plead guilty, he admitted signing the waiver of indictment and waiver of his right to appeal, and he signed the admonishments. Also attached to the summary judgment motions are copies of pleadings that were filed during the time in which each Defendant represented

11

Lester, a copy of Lester's signed admonishments and stipulations of evidence, copies of Texas DPS Criminal History tracking reports for Lester and copies of other documents from the State's file on Lester regarding the facts surrounding the offenses.

Attached as an exhibit to the Andreas Defendants' Motion for Summary Judgment as well as the Johnson Defendants' Motion for Summary Judgment is an affidavit by Johnson wherein, he avers the following:

> [] On May 19, 2014, I was privately retained to represent Colton Alan Lester . . . on two criminal allegations of Online Solicitation of a Minor Under 14, both second degree felonies, in Polk County, Texas. The allegations were that Lester, while 17 years of age, had solicited online two 12-year-old females, to meet in person, and engage in sexual activity with him. . . .

> [] In July 2014, Lester was indicted on the aforementioned allegations. In both Indictments, Cause Nos. 23,488 and 23,489, Lester was charged with violations under [Texas Penal Code] §33.021(c). There is [a] critical distinction between [Texas Penal Code] §33.021(b) and §33.021(c), that pertains to the case. The Texas Court of Criminal Appeals, on October 30, 2013, held §33.021(b) to be unconstitutionally overbroad in *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013)[.] However, the *Lo* opinion did not alter the constitutionality of §33.021(c). Per my notes in Lester's file, on May 30, 2014 I reviewed the *Lo* case. It was a matter of public record, a published opinion at that time which anyone could review, including Lester.

> [] On August 12, 2014, I reviewed the State's discovery pertaining to the Indictments. My opinion at that time was the evidence was sufficient to support a conviction for one of the two Indictments and I so advised Lester.

> [] On August 26, 2014, Lester had a court appearance. I met with [the] Polk District Attorney, for the purpose of plea negotiations. [The

D.A.]'s original plea offer was: (a) plead guilty as charged in both causes 23,488 and 23,489; (b) 5 years Deferred Adjudication Community Supervision; (c) $2,000 fine; (d) 740 hours of community service; (e) $80.00 Crime stopper's fee; (f) Sex Offender Conditions (i.e. sex offender registration and sex offender counseling); (g) no contact with either alleged victim; and, (h) Orders of Deferred Adjudication to run concurrently. Ultimately, [the D.A.] agreed to our following counteroffer: (a) Dismiss both Indictments; (b) plead guilty by Information to one charge of Attempted Online Solicitation of a Minor, a third degree felony; (c) 5 years Deferred Adjudication Community Supervision; (d) $2,000.00 fine; (e) 240 hours of community service; (f) $50 Crime stopper's fee; (g) Sex Offender Counseling; and (h) No contact with either alleged victim.

[] As amended, the plea offer contained two key advantages to Lester. By pleading to one attempted offense, Lester's TDCJ exposure (if he were to violate deferred adjudication community supervision) was reduced from a maximum of 40 years down to a maximum of 10 years []. Second, Lester would avoid being required to register as a sex offender[.]

[] After meeting with [the D.A.], I met with Lester and fully advised him concerning the evidence against him and of the amended plea offer. Lester advised that he wished to accept the plea agreement that same day[.] I did advise Lester, in my opinion, the evidence was sufficient to convict him on at least one count under §33.021(c), although the section . . . that was charged in the two Indictments was §33.021(f). . . .

[] In order to present the plea agreement to the Court on the same day, it was necessary for the District Attorney's office to draft a new charging document to replace the Indictments being dismissed and it specifically charged a violation of §33.021(f)[.] An "Information" was drafted and assigned a new case number (Cause No. 23538). I had nothing to do with the drafting of the Information or related plea paperwork. They were likely drafted by non-attorney staff members in the DA's office as is customary practice. The new [I]nformation stated no specific provision of §33.021[.] The Order of Deferred Adjudication, also drafted by the DA's office, stated a violation of §33.021(f), as had the prior Indictments, which is a penalty statute that contains both references to §33.021(c) and §33.021(b). Section

13

33.021(f) has not been declared unconstitutional. I was under the belief and I believe we were all under the belief, including Lester, at the time the plea was entered that Lester was pleading guilty to a violation of §33.021(f), which contains a reference to §33.021(c). Indeed, Lester was admonished at the time of his plea and fully and freely admitted that he was guilty of underlying wrongful criminal conduct of Attempted Online Solicitation of a Minor. He admitted to me that he was guilty of Online Solicitation of Minor Under 14 as previously charged. No one there recognized that some of the language of the new Information filed, which made reference to no statutory violation, actually tracked some language found in §33.021(b), rather than §33.021(c).

[] . . . I thought Lester was being charged with only one count of a violation of §33.021(c), through §33.021(f), which was the only stated offense found in the Order of Deferred Adjudication. Neither I, [the D.A.] who drafted the new Information, nor the Judge caught the specific verbiage of the new Information raising any problem. It should be noted that should Lester have plead[ed] guilty to what he was originally indicted for or what we all thought the Information charged him with, his subsequent violations and revocation would still be valid and to this day he would be incarcerated based upon a later adjudication of guilt when he admittedly violated his terms of probation. . . .

[] Finally, Colton Lester has never been exonerated on direct appeal, through post-conviction relief, or otherwise. I have read the Opinion in No. WR-88,227-01, *Ex Parte Colton Alan Lester*, as well as the Concurring Opinion, both dated April[] 11, 2018. There is nothing in either the Opinion or Concurring Opinion that states that Colton Lester is or was exonerated or is or was innocent of the crimes charged. . . .

Attached as an exhibit to Berg's motion for summary judgment is an affidavit wherein Berg avers that he was appointed Lester's defense counsel and represented him when the State filed its second motion to adjudicate Lester's guilt. Berg's affidavit also included the following, in pertinent part:

14

[] Mr. Lester advised me he had violated [] his probation. I obtained copies of and reviewed the State's case and observed that Mr. Lester had violated probation once before. I also saw that in 2014, when he was originally charged, Mr. Lester had admitted to communicating with someone he believed to be a minor for the purpose of meeting to have sex, which is a crime under Texas Penal Code §33.021(c). The original order of deferred adjudication read, "attempted online solicitation of a minor." The word "solicit" is used in Texas Penal Code §33.021(c), but not in Texas Penal Code §33.021(b). The order referred to Texas Penal Code §33.021(f), which set the level of offense for both (b) and (c).

At the summary judgment hearing on August 29, 2019, the trial court granted the summary judgment motions, and explained the following basis for its ruling:

> . . . [The charging officer] specifically used language straight from Subsection (c) of 33.021. As you know, 33.021(c) has never been declared unconstitutional, to my knowledge. It was not unconstitutional when he was charged. He was charged with knowingly soliciting over the Internet the said -- the person's name -- to meet Colton Lester. That is Subsection (c); it is not Subsection (b).
>
> Attached to his complaint, which opened the criminal file, which opened the charges and created a case against Mr. Lester, are factual little pinpoints, 10 or 15 points that include within it specific facts about soliciting this underaged -- under 14 years old, a child, to meet. There were other facts in there also but specifically tracking as a second-degree felony, which is what Subsection (c) is and was, not (b).
>
> There's a computer printout that's been filed by you lawyers with two different tracking methods. One is under (f) -- I don't know how this all happened, but they call it (f), which we all know -- I guess y'all know and understand that that's just simply a provision that says whether it's a second- or third-degree felony and that the third-degree (b) can be bumped to a two if it's under the age 14. It's only a sentencing provision. You don't get charged under that. So that's totally an anomaly. It's a nothing to me.
>
> The tracking suffix, which is in the computers of the courts here, of 33.021(c) is there as a second-degree felony and, again, tracking the complaint, which is what the case has to do. It has to track the complaint in the criminal courts. You can't just file a complaint and then convict him of something else over here that has nothing to do with what the

15

complaint is. That's the whole purpose of the complaint, just like an indictment is, is that you track it into a judgment.

And so the officer, who may or may not have known -- I suspect he knew that (b) was unconstitutional. I don't know. In Seth Johnson's affidavit, he seems to imply that he knew it, that it was unconstitutional. So everybody is thinking it's a (c) case, a constitutionally pursued case.

Then as the negotiations happened -- and I sort of figured that -- I did figure this out before I read Seth Johnson's affidavit. The negotiations were, let's -- instead of you -- whatever the offer was from the State, make it an attempted online solicitation. That reduces it from a second- to a third-degree felony -- which is what the charge ended up being, still as a (c) because of the original complaint -- reducing the punishment range; still a constitutional charge. Then Colton Lester signed an affidavit admitting to that, with, apparently, a new -- which I just saw this morning; the staff here got it for me -- the new information. The new information uses language that -- it doesn't reference (c), (f), . . . anything. It just has new information, probably typed by some staff member in the DA's office, I'm assuming, with language that talks about composing a text message containing an explicit sexual proposition. I don't think that a violation of anything. I may be wrong. Just composing something, it's certainly not language from (c), and it's not language from (b) either, unless it is communicated. The complaint doesn't talk about communication.

So my point is, is that when Colton Lester -- I don't know what the intentions were by everybody involved, but when Colton Lester signed his affidavit pleading guilty, he was pleading -- as far as I'm concerned and what the record seems to reflect -- to (c), which was constitutional.

Regardless of that, he pled to conduct which was criminal in nature, got a deferred judgment. We know that. Got a final judgment after violation of his probation. Ultimately, the final judgment references (f), which is a nonstatute as far as an offense is concerned.

So from the get-go, it was a case of a violation of (c), the 33.021. Why is that important? Because what the cases say is that if, in fact, you've got new evidence; if, in fact, you are not the person that committed the acts; if in fact, this is just a totally -- one of those cases where we just got the wrong person and you are actually factually innocent; then you have satisfied *Peeler*. That has not happened in this case as far as this Court is concerned.

> . . . I just can't get there from the plaintiff's point of view, and *Peeler* is dispositive of the summary judgments.
>
> Now -- yeah. The one last thing I was going to say is that in *Ex parte Colton Alan Lester*, when his conviction was set aside, the Court of Criminal Appeals does reference that he was convicted of attempted online solicitation and sentenced to imprisonment, and they cite Subsection (b), which was the unconstitutional section. With all due respect to that Court, I don't' know how they got there unless somehow they equated (f) to (b), but it appears to me that his conviction was under (c).

The trial court entered an Order granting the summary judgment in favor of the Defendants based on *Peeler* and denied summary judgment on all other grounds. Lester appealed and Berg cross-appealed.

In addition to his legal malpractice case, Lester also filed a request for compensation under the Tim Cole Act. *See In re Lester*, 602 S.W.3d 469 (Tex. 2020). On May 15, 2020, the Texas Supreme Court conditionally granted Lester's petition for writ of mandamus and directed the Comptroller to compensate Lester for wrongful imprisonment under the Tim Cole Act. *See id.* at 475.

## Appellate Issues

In two issues, Appellant argues the trial court erred in granting summary judgments to the Defendants. Appellant contends that the *Peeler* doctrine does not apply because Appellant was exonerated through post-conviction relief, and therefore the trial court erred in granting the summary judgments based on the *Peeler* doctrine. Next, Appellant argues summary judgment cannot be affirmed on any of the other grounds presented because: (1) public defenders in Texas are not immune

17

from legal malpractice liability arising from their appointment; (2) the discovery rule applied and was not negated; and (3) the *Hughes* tolling rule[8] applied to toll the statute of limitations on Appellant's malpractice claim until the litigation related to the habeas corpus proceeding was finally concluded and the malpractice claims were filed within two years from that date.

Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional summary judgment has the burden to establish that no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 548 (Tex. 1985). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* at 549. An appellate court may affirm a summary judgment

---

[8] In *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991), the Texas Supreme Court held that the limitations period for legal-malpractice claims would be tolled until "all appeals on the underlying claims are exhausted."

18

on any ground the movant presented in its motion for summary judgment, regardless of whether the trial court identified the ground it relied upon in granting summary judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

Analysis

Lester asserts that the trial court erred in granting summary judgment based on the *Peeler* doctrine because he presented proof of exoneration by post-conviction relief. According to Lester, even if the *Peeler* doctrine applies, summary judgment was improper because he does not have to prove actual innocence. Lester also argues that even if *Peeler* applies and requires actual innocence, he is innocent because the offense he was convicted of was not a crime when the acts occurred.

The Supreme Court in *Peeler v. Hughes & Luce, LLP*, was presented with the question of whether a convicted criminal could sue her criminal-defense attorney for malpractice. 909 S.W.2d at 495. Carol Peeler was indicted by a federal grand jury on twenty-one counts after being suspected of engineering illegal tax write-offs. *Id.* at 495-96. Peeler hired Darrell Jordan, a partner with Hughes & Luce, LLP, to represent her. *Id.* at 496. While under Jordan's advisement, Peeler signed a plea agreement admitting guilt to one count of aiding and assisting the filing of a false and fraudulent tax return. *Id.* In exchange, the government dropped the balance of the charges against her, recommending a relatively short prison sentence. *Id.* Peeler

19

was eventually ordered to serve five years of probation, with a fine of $100,000 and $150,000 in restitution. *Id.*

Peeler later sued Jordan for legal malpractice, alleging that before she pleaded guilty, he knew but failed to tell her that the government had offered her absolute transactional immunity if she testified against her colleagues. *Id.* In the trial court, Jordan and his firm, Hughes & Luce, moved for summary judgment, arguing that Peeler's own conduct proximately caused her damages. *Id.* The trial court agreed and granted summary judgment. *Id.*

On review, the Texas Supreme Court in a plurality decision determined that a convicted criminal could not sue her criminal-defense attorney for malpractice except in certain circumstances. *Id.* at 498. Under the "*Peeler* doctrine," convicted criminals may not sue their criminal-defense attorneys for malpractice unless "they have been exonerated on direct appeal, through post-conviction relief, or otherwise." *Id.* The plurality explained that "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict[]" and that allowing a convicted criminal to recover damages through a legal-malpractice claim would allow that criminal "to profit by his own fraud, or take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." *Id.* at 497-498 (quoting *State ex. rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 504 (Mo. Ct. App. 1985)). The plurality also explained that it is the convicted criminal's illegal

20

conduct, not the attorney's negligence, that proximately causes the conviction. *Id.* at 497-98. In other words, even if the defense attorney had not been negligent, the conviction would still follow based on the evidence of the underlying crime. *Id.* The *Peeler* plurality held that convicted criminals wanting to sue their defense attorneys must first remove the proximate-cause bar by being "exonerated." *Id.* at 498. The Court in *Peeler* did not reach the issue of what it means to be "exonerated."

The Texas Supreme Court reached the issue in *Gray v. Skelton*, and therein it decided what it means to be "exonerated." *See* 595 S.W.3d 633, 637-39 (Tex. 2020). In *Gray*, Skelton, an attorney, had drafted a will for a client, Canales, who died about a year after the will's execution. *Id.* at 635. Although the client retained the signed original, the family could not find it after Canales died and Skelton's copy was water-damaged from a storm that partially flooded her law office. *Id.* Skelton printed an electronic copy of the will she had on her computer hard-drive that did not have signatures of the client or witnesses, cut the signatures off the water-damaged version, and pasted the signatures onto the printed copy, and filed the will for probate. *Id.* After her administrative assistant informed law enforcement that she suspected Skelton created a false will, an investigation followed, and Skelton was indicted for forging the client's will. *Id.*

Skelton pleaded not guilty and hired Gray, a criminal-defense attorney. *Id.* After she was convicted of forgery, she replaced Gray with new counsel for the

appeal. The new appellate counsel argued, among other things, that Gray rendered ineffective assistance of counsel. *Id.* The court of appeals affirmed her conviction, finding the record insufficient to hold Gray's representation to be ineffective under the Sixth Amendment. *Id.* at 635-36. The Court of Criminal Appeals subsequently refused Skelton's petition for review.

The client's relatives filed a will contest in the probate court and the jury found that the client executed a valid will, Skelton did not act with the intent to defraud or harm another when she altered the will, and the will submitted for probate was an accurate copy of the client's will. *Id.* at 636. Skelton filed an application for writ of habeas corpus in the district court, renewing her ineffective-assistance argument and claiming she was "actually innocent" based on the jury findings in the will contest. *Id.* The court of appeals reversed the district court's denial of habeas relief, found that Gray's representation was ineffective under the Sixth Amendment, vacated the forgery conviction, but did not consider whether Skelton was actually innocent of forgery. *Id.*

Skelton then sued Gray for malpractice. *Id.* Gray moved to dismiss her claim under Texas Rule of Civil Procedure 91a, arguing Skelton was not "exonerated" under *Peeler* and that the two-year statute of limitations barred her claim. *Id.* The trial court granted Gray's motion and found that the *Peeler* doctrine barred Skelton's malpractice claim because Skelton failed to prove exoneration. *Id.* The court of

22

appeals reversed the trial court's decision, held that the *Peeler* doctrine did not apply because Skelton's conviction had been vacated and that the malpractice suit was timely filed. *Id.* On Gray's petition for review, the Supreme Court of Texas noted that *Peeler* did not precisely define "exoneration," and the Court addressed the question of whether Skelton had been "exonerated" when her conviction was set aside for ineffective assistance of counsel. *Id.* at 637. Although Skelton argued that the vacating of her sentence (on grounds of ineffective assistance and on grounds unrelated to innocence) equated to "exoneration," the Court disagreed. *Id.* at 637-38. The Court found this argument inconsistent with the *Peeler* plurality's "innocence requirement" and determined that having counsel that falls below minimum Sixth Amendment standards "suggests nothing about [Skelton]'s innocence of the underlying crime." *Id.*

The Court in *Gray* held, however, that an actual-innocence finding in a habeas proceeding is not the only means by which an individual can meet *Peeler*'s exoneration requirement, and that "for those whose conviction has been vacated on grounds other than actual innocence," they must obtain, as a predicate to the submission of their legal-malpractice claim, an affirmative finding that the malpractice plaintiffs are innocent of the crime of which they were formerly convicted. *Id.* at 639. After deciding that the statute of limitations and the *Peeler* doctrine did not bar Skelton's malpractice claim against Gray, the Court affirmed

23

the court of appeals' decision, remanded the case for trial, and concluded that Skelton had to obtain a finding of innocence in the malpractice action to maintain her claim. *Id.* at 641.

Lester's habeas corpus relief as stated in the habeas order was based on the unconstitutionality of section 33.021(b) and the order did not include a finding of actual innocence. Therefore, under *Gray* and *Peeler*, Lester would have to obtain a finding of actual innocence to maintain his legal-malpractice claim. The Defendants, however, have presented evidence with their summary judgment motions that, as a matter of law, Lester was not actually innocent. Lester failed to present contrary evidence raising a material fact issue that he was actually innocent of the crime for attempted online solicitation. And we agree with the trial court that the summary judgment record indicates Lester was convicted of a crime under section 33.021(c), and not 33.021(b), and sentenced under section 33.021(f). According to the record before us, Lester was not charged with an offense under section 33.021(b). Both the Order of Deferred Adjudication and the Order on Motion to Adjudicate Guilt listed the statute of conviction as "section 33.021(f)[,]" which has never been held unconstitutional, and the information alleged "attempted online solicitation" which fits the "solicit" verbiage of section 33.021(c), which has also never been held unconstitutional.

24

We reject Lester's argument that he has proven his actual innocence simply because of the Supreme Court's ruling in his Tim Cole Act claim. *See In re Lester*, 602 S.W.3d 469. The Texas Supreme Court's ruling in his Tim Cole Act case conditionally granted Lester's petition for writ of mandamus and directed the Comptroller to compensate Lester for wrongful imprisonment under the Tim Cole Act. The Supreme Court did not have the same record before it when it decided his Tim Cole Act claim. The conclusions it reached regarding Lester's criminal conduct would be incorrect based on the record now before us. The Supreme Court concluded on the limited record before it that "as a matter of historical fact, Lester's conduct was not a crime at the time it was committed because the Court of Criminal Appeals had already declared [Section 33.021(b)] [of the] online-solicitation statute unconstitutional." *Id.* at 473.

Our appellate record does not support a finding that Lester's conduct was not a crime at the time it was committed. Rather, as a matter of historical fact, at the time he committed the offenses in question, his conduct was a crime under section 33.021(c) of the online solicitation statute. The record before the trial court and before us, does not support the allegation that he was convicted under section 33.021(b). The information under which Lester was convicted tracked the language of section 33.021(c) and not (b), and the Defendants presented uncontested evidence

that Lester was charged with and convicted of attempted online solicitation of a minor which falls within section 33.021(c).

The Defendants also established as a matter of law that Lester is not actually innocent, and their alleged malpractice was not a proximate cause of his alleged damages. On the appellate record before us, we conclude that the trial court did not err in granting the Defendants' summary judgment motions. We overrule Lester's first issue. Because we have determined that the trial court did not err in granting the Defendants' summary judgment motions under the *Peeler* doctrine, we need not address Lester's second issue. *See Cates*, 927 S.W.2d at 625; *see also* Tex. R. App. P. 47.1 (stating that appellate court need only address issues necessary for final disposition of appeal).

Berg's Cross-Appeal

On cross-appeal, Berg argues that he is entitled to summary judgment because public defenders are entitled to official immunity. Because our disposition of Lester's appeal is dispositive of Berg's cross-issue, we also do not address Berg's cross-appeal. *See* Tex. R. App. P. 47.1.

We affirm the trial court's judgment.

AFFIRMED.

                                _____

                                    LEANNE JOHNSON
                                          Justice

Submitted on May 6, 2021
Opinion Delivered July 29, 2021

Before Golemon, C.J., Horton and Johnson, JJ.